RECEIVED

SEP 0 7 2023

U.S. District Court
Middle District of TN

# UNITED STATES DISTRICT COURT

for the

Middle District of Tennessee

_____ Division

|  |  |
|---|---|
| Henry Hodges<br>_____<br>*Plaintiff(s)*<br>*(Write the full name of each plaintiff who is filing this complaint.*<br>*If the names of all the plaintiffs cannot fit in the space above,*<br>*please write "see attached" in the space above and attach an additional*<br>*page with the full list of names.)*<br>-v-<br><br>Frank Strada et al see Attached<br>_____<br>*Defendant(s)*<br>*(Write the full name of each defendant who is being sued. If the*<br>*names of all the defendants cannot fit in the space above, please*<br>*write "see attached" in the space above and attach an additional page*<br>*with the full list of names. Do not include addresses here.)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. _____<br><br>*(to be filled in by the Clerk's Office)* |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

See — Exhibit A - List and Description of Previous Civil Suits

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name    HENRY EUGENE HODGES

All other names by which you have been known:

ID Number    102143

Current Institution    RIVERBEND MAXIMUM SECURITY PRISON

Address    7475 COCKRILL BEND BLVD.

NASHVILLE    TENN    37209-1048
     *City*        *State*      *Zip Code*

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

Name    FRANK STRADA

Job or Title *(if known)*    TDOC COMMISSIONER

Shield Number

Employer    TENNESSEE DEPARTMENT OF CORRECTION

Address

NASHVILLE    TENN
   *City*      *State*      *Zip Code*

☑ Individual capacity

Defendant No. 2

Name    CENTURION of Tennessee

Job or Title *(if known)*    PRISON (RMSI) MEDICAL SERVICE

Shield Number

Employer    CENTURION of TENNESSEE

Address    7475 COCKRILL BEND BLVD

NASHVILLE    TENN    37209-1048
   *City*      *State*      *Zip Code*

☑ Individual capacity

12

Defendant No. 3

Name    KAREN MILLINER

Job or Title *(if known)*    PSYCHOLOGIST

Shield Number

Employer    CENTURION OF TENNESSEE

Address    7475 COCKRILL BEND BLVD

NASHVILLE    TENN    37209

City      State      Zip Code

[X] Individual capacity    [ ] Official capacity

Defendant No. 4

Name    DENNIS DAVIS

Job or Title *(if known)*    UNIT MANAGER DEATH ROW

Shield Number

Employer    TENNESSEE DEPARTMENT OF CORRECTION

Address    7475 COCKRILL BEND BLVD

NASHVILLE    TENN    37209

City      State      Zip Code

[X] Individual capacity    [ ] Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971),* you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

[ ] Federal officials (a *Bivens* claim)

[X] State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

DUE PROCESS VIOLATION 23-0117/359047

MEDICAL MALPRACTICE 22-0393/356730

DEATH PENALTY IS CRUEL AND UNUSUAL PUNISHMENT 8TH AMENDMENT

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens,* what constitutional right(s) do you claim is/are being violated by federal officials?

13

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

ALL DEFENDANT WORK FOR THE TDOC AND ARE ACTING UNDER COLOR OF LAW
CENTURION OF TENNESSEE CONTRACTS WITH THE TDOC AND THUS ARE ACTING UNDER COLOR OF LAW

## III. Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- ☐ Pretrial detainee
- ☐ Civilly committed detainee
- ☐ Immigration detainee
- ☒ Convicted and sentenced state prisoner
- ☐ Convicted and sentenced federal prisoner
- ☐ Other *(explain)*

## IV. Statement of Claim       See 42 USC § 1983 ; and 42 USC § 1997

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed. See Next

Henry Hodge "Friend" assisted Lawsuit for Hall

A. If the events giving rise to your claim arose outside an institution, describe where and when they arose.

See CLAIMS 1, 2, AND 3
Claim 1 Page 15, Claim 2 Page 17
Henry Hodge     Claim 3, @ Pages 18-22

B. If the events giving rise to your claim arose in an institution, describe where and when they arose.

See CLAIMS 1, 2, AND 3

Page 4 of 11

C. What date and approximate time did the events giving rise to your claim(s) occur?

See CLAIMS 1, 2, AND 3

10-7-22

D. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

See CLAIMS 1, 2, AND 3

Claims /Grievances to Shavreka Ward.

Henry Hodges Yes, See Page 12-13 Petitions to Government

## V. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

See CLAIMS 1, 2, AND 3

JON HALL   NEXT FRIEND   PETITION TYPED   Henry Hodges

## VI. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

$50 Dollars A DAY FOR EVERYDAY I HAVE BeeN ON PUNITIVE SEGREGATION FROM DENNIS DAVIS KEVIN GENOVESE TONY MAYES

$1000 A DAY IN PUNITIVE DAMAGES AGAINST KENT COLBURN FOR illigimately STRAPPING me DOWN

$100,000 Dollars FROM KAREN MilliNER FOR THE Loss OF MY PENIS OPEN TO ATTORNEY SUGGESTION

$100,000 IN PUNITIVE DAMAGES AGAINST CENTURION OF TeNNESSEE FOR THEIR employees FAILURE TO DO THEIR JOBS

DEFENDANT NO. 5

KENT COLBURN

PSYCHIATRIST

CENTURION OF TENNESSEE
7475 COCKRILL BEND BLVD
NASHVILLE TENN 37209
INDIVIDUAL ~~OFFICIAL~~ CAPACITY

DEFENDANT NO. 6    TONY MAYES
EX WARDEN

TDOC
7475 COCKRILL BEND BLVD
NASHVILLE TN 37209

INDIVIDUAL ~~OFFICIAL~~ CAPACITY

DEFENDANT NO. 7    KEVIN GENOVESE
ASSISTANT COMMISSIONER

TDOC
5TH FLOOR RACHEL JACKSON Bldg.
320 SIXTH AVE, NORTH
NASHVILLE TN 37243

INDIVIDUAL ~~OFFICIAL~~ CAPACITY

DEFENDANT NO. 8    FRANK HEROUX
TDOC / RMSI
7475 COCKRILL BEND BLVD
NASHVILLE TN 37209

INDIVIDUAL CAPACITY

16

## IX. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 8-27-23

Signature of Plaintiff    Henry Hodges
Printed Name of Plaintiff    HENRY HODGES
Prison Identification #    102143
Prison Address    7475 Cockrill Bend Blvd
    NASHville    Tenn    37209
         City        State      Zip Code

### B. For Attorneys

Date of signing: _____

Signature of Attorney _____
Printed Name of Attorney _____
Bar Number _____
Name of Law Firm _____
Address _____
         City        State      Zip Code
Telephone Number _____
E-mail Address _____

RMSI GRIEVANCE NO. 23-0117
CLAIM 1 Due process VioIATION


RMSI GRIEVANCE NO. 22-0393
CLAIM 2 Medical MAlPRACTICE



CLAIM 3 DEATH PeNAHY CRuel AND UNUSUAl
PUNISHMENT IS NOT GRIEVABLe
See Exhibit 3 Grievance # 23-0225/00360311

# EXHIBIT
# A

LIST AND DESCRIPTION
OF PREVIOUS CIVIL SUITS

# LIST OF CIVIL ACTIONS

1.  On October 23, 1996, I filed two civil suits related to a beating I suffered at the hands of guards at Brushy Mountain State Penitentiary. The first suit was dismissed for the failure to prosecute, but the second proceeded to a jury trial that I conducted *pro se*. On October 6, 1997, still acting pro se, I filed a third suit, adding more defendants with more specific names, which was consolidated with the second suit.

    A.  I was physically beaten by correctional officers.

    B.  Case caption and Court: *Hodges v. Campbell,* 3:96-cv-00923 (dismissed), *Hodges v. Tennessee Department of Correction et al.,* 3:96-cv-00924 (tried), *Hodges v. Monroe,* 3:97-cv-00740 (consolidated with 924 and tried), all in the United States District Court for Eastern District of Tennessee.

    C.  I contended that the beating I suffered at the hands of Brushy Mountain guards was cruel and unusual in violation of the Eighth Amendment to the United States Constitution.

    D.  The defendants were the Commissioner of the Department of Correction, Donal Campbell, Associate Wardens Bill Lively and Gil Monroe, Dr. Devin Little, and corrections employees David Bunch, Ricky Bunch, Tony Bunch, John Childs, Faye Jeffries, Franklin Nelson, Curtis Newberry, Bob Phillips, D. Rogowski, Bill Wallace, T Bunch, J Child, MC Hamby and Gil Monroe, was well as John and Jane Does.

    E.  The jury found in my favor and awarded me five dollars in damages.

2

2. On June 9, 1997 I filed a class action lawsuit challenging the treatment of inmates at Brushy Mountain State Prison.

   A. Guards at Brushy Mountain physically abused inmates housed in the high security annex.

   B. Case caption and Court: *Hodges, et al. v. Campbell, et. al.* 97-cv-00438, in the United States District Court of the Eastern District of Tennessee.

   C. We alleged that the guards were treating inmates in an unconstitutionally abusive manner in violation of the Eight Amendment.

   D. Defendants were Commissioner Donal Campbell, Ricky Bunch, Anita Cook, MC Hamby and John and Jane Does.

   E. Case was dismissed as I had my separate suit pending. *See Hodges v. John Does, 1-50,* 145 F.3d 1331 (6th Cir. 1998) (Table). I believe that the court may have declared this suit to be frivolous.

3. On February 6, 1997 I filed a suit in the Middle District of Tennessee related to an incident where I was pepper sprayed and beaten by guards at Riverbend Maximum Security Institution.

   A. While I was in belly chains and no threat to any guards, a Riverbend Lieutenant pepper sprayed me in the face, rammed my head into a wall, and ripped a necklace from my neck (which he never returned), and subsequently choked me, before pepper spraying me a second time, and then throwing me to the ground. I additionally alleged other bad acts by Riverbend staff, but the primary complaint related to the Lieutenant's violent abuse.

3

B.    Case caption and Court: *Hodges v. Campbell, et al.*, 3:97-cv-00142, in the United States District Court for the Middle District of Tennessee.

C.    I filled out a form "Complaint for Violation of Civil Rights under 42 U.S.C. 1983." This form did not ask me to set forth a legal theory for relief.

D.    The defendants were Warden Ricky Bell, Commissioner Donal Campbell, Wayne E. Chaney, Roscoe Clayton, William Foxx, R. Gray, Willie Gray, Les Harrison, Alton Hesson, Becky Matheny, L. Rucker, and Lt. FNU Vance.

E.    I voluntarily dismissed case on April 7, 2000.

4.    On March 17, 1997 I filed a suit in the Middle District of Tennessee contending that the Tennessee death penalty process is flawed, and that indigent defendants are denied effective representation.

A.    I alleged that the system of providing counsel to indigent death row inmates was flawed, and led to constitutionally inadequate representation, while the process for identifying who should receive death notice was capricious. I observed that in Davidson County, Tennessee, since 1976 and through to the filing of my suit, there had been approximately 2,000 murders, but only six (6) individuals who received a death sentence. I observed that "an individual could find himself being charged with the death penalty, and this person could eventually lose his life, due simply to the fact that the person who is responsible for deciding who will and will not be singled out is simply having

4

a 'bad day.'" I contended that the defendants were responsible for denying me adequate defense counsel at trial and on appeal.

B.      Case caption and Court: *Hodges v. Sundquist, et al.*, 3:97-cv-00294, in United States District Court for the Middle District of Tennessee.

C.      I contended that my due process rights under the 14th Amendment were violated. I also sought to be given class action status.

D.      The defendants were Attorney General Charles Burson, District Attorney General Victor Johnson, Judge Walter Kurtz, the Tennessee Legislature, Governor Ned Ray McWherter, Governor Don Sundquist, and Attorney General John Walkup.

E.      District Court dismissed this Complaint, without prejudice, the same day it was filed. The court found that possibly my claims could be heard under 28 U.S.C. § 2254 (federal habeas corpus), but it was improper to proceed as a civil rights claim, and in that regard my suit was frivolous.

5.      On May 6, 1997 I filed suit in the Middle District of Tennessee alleging misconduct at Brushy Mountain Prison.

A.      Guards at Brushy Mountain State Prison treated inmates cruelly.

B.      Case caption and Court: *Hodges v. Campbell*, 3:97-cv-00481, in the United States District Court for the Middle District of Tennessee.

C.      This suit was related to my previously filed suit in the Eastern District of Tennessee and, broadly, alleged the same misconduct.

5

D.      The defendants in this cause were Commissioner Donal Campbell, and corrections employees, Ricky Bunch, Anita Cook, M.C. Hamby, Bill Lively, Gil Monroe, J.H. Rose, Robert Sanderson, and John Does.

E.      This case was transferred and consolidated with E.D. Tenn. case no. 3:97-cv-00438.

6.      On September 24, 1997 I filed suit in the Middle District of Tennessee regarding multiple issues, including the possible outsourcing of correctional responsibilities to private companies.

A.      I predicted that if Tennessee went forward with outsourcing corrections responsibilities to a private corporation, such as Corrections Corporation of America or Wackenhut, that inmates would suffer. I further predicted that if they outsourced responsibility for food services to the Marriott Corporation, that this would lead to significant reduction food quality within the prison system and would increase the risk of food poisoning, to the detriment of inmates. I contended that a proposed petition by a telecommunications provider to increase the rates charged for prison calls was unfair. I contended that the use of electric stun devices in prison was unnecessary. Finally, I personally witnessed water leakage, freezing conditions, and falling concrete at Riverbend, and I was concerned there was also radon gas exposure.

B.      Case caption and Court: *Hodges v. Sundquist, et al.*, 3:97-cv-00985, in the United States District Court for the Middle District of Tennessee.

6

C.    I sought injunctive relief that would prevent a private entity from taking over the prisons, which would require food be cooked properly, that would prohibit telephone rate increases, and would disallow use of electronic devices to control inmates. Further I sought that Riverbend Prison be condemned or repaired.

D.    The Defendants were Commissioner Donal Campbell, Corrections Corporation of America, Invision Telecom, Inc., the Tennessee Legislature, Marriott Corporation, Governor Don Sundquist, and the Tennessee Regulatory Authority.

E.    As I failed to allege that I had been injured by any change in prison management, by food poisoning, or by use of electronic devices, those three sub-claims were dismissed as frivolous, but without prejudice. As I did not allege that I could not afford to contact my attorney, or make emergency calls, my challenge to increased phone rates was dismissed without prejudice as frivolous. As my claim regarding conditions at Riverbend related to the time period 1991-1995, it was dismissed under the one (1) year statute of limitations.

7.    On March 13, 1998 I filed suit in the Middle District of Tennessee regarding violations of my procedural due process rights.

A.    The defendants who had assaulted me, or witnessed that assault (leading to case 3:97-cv-0142, above) had filed incident reports contemporaneous with that assault in which they had not alleged that the use

7

of force was necessary. However, in federal court, for the first time, they alleged that the use of force was necessary. By not filing complete incident reports they deprived me of notice and a chance to challenge their representations.

B.    The case caption and Court: *Hodges v. Foxx, et al.*, 3:98-cv-00234 in the United States District Court for the Middle District of Tennessee.

C.    This was form complaint that did not require I set-forth a legal theory for relief.

D.    The Defendants were Wayne E. Chaney, William Foxx, Willie Gray, Becky Matheny and Tommy Vance.

E.    The court held that I had had **three** prior actions dismissed as frivolous, citing, 3:97-cv-985 (true), 3:97-cv-294 (true), and 3:97-cv-438. *See* Att. 1, Order. 3:97-cv-438 was a habeas petition filed by counsel on behalf of a man named Willie Lee Bates. *See* Att. 2, Bates Docket Sheet, and Att. 3, Bates Parties.  As I the court believed I had three prior frivolous suits, it dismissed this suit "without prejudice to [my] right to resubmit his complaint with the required filing fee." Att. 1 at 2.  Based on the factually erroneous conclusion that I had three prior frivolous suits, the court then declared this lawsuit frivolous and denied me leave to appeal *in forma pauperis. Id.* at 3.

8.    On April 7, 1997, I filed a Petition for Declaratory Judgment in The Chancery Court of Davidson County. I challenged the TDOC drug screen policy as arbitrary and unfair. The case caption is *Henry Hodges v. Donal Campbell*,

8

Case No. 97-1149-I. I asked that the punishment for failed drug screen be no more than 30 days in segregation and loss of vistiation privileges for no more than 30 days. Chancellor Kilcrease dismissed the case for lack of subject matter jurisdiction on August 7, 1997.

9.    On May 18, 2005, I filed suit in the Middle District of Tennessee, requesting injunctive relief.

A.    A correctional officer had falsified a drug screen result, and the prison improperly took away my television and visiting privileges.

B.    The case caption and Court: *Hodges v. Bell*, 3:05-mc-00046, in the United States District Court for the Middle District of Tennessee.

C.    I contended that I was entitled to an injunction that required adherence to prison policies regarding drug screening.

D.    The defendants were Warden Ricky Bell, and Correctional Officer Mike Slaughter.

E.    On July 21, 2005, my request for injunctive relief was denied without prejudice.

10.    2013 Chancery Court Methods of Execution Suit

A.    I intervened in the suit filed by various death row inmates challenging the constitutionality of Tennessee's use of compounded pentobarbital to execute inmates sentenced to death.    We contended that compounded pentobarbital created a significant risk of extreme suffering during the

9

execution process. We also challenged the use of the electric chair as an alternative method of execution.

B.      Case caption and court: *West, et al.* v. *Schofield*, et al., Davidson County Chancery Court, No. 12-1627-I.

C.      We contended that the use of compounded drugs was illegal, and that such drugs could not reliably render an inmate insensate to pain and suffering prior to causing death, and that they would cause extreme pain and suffering prior to death, and that this violated the Federal and State constitutional prohibitions on cruel and unusual punishment. We additionally contended that Tennessee's electric chair was poorly designed, and would cause inmates to catch fire, or otherwise suffer extreme torment, if utilized in executions.

D.      We sued the Commissioner of the Department of Correction, Derrick Schofield, the Warden for Riverbend, Wayne Carpenter, the Deputy Warden, Tony Mays, the Deputy Commissioner, Jason Woodall, the Assistant Commission, Tony Parker, and John Does Physicians, Pharmacists, Medical Examiners, Medical Personnel and Executioners.

E.      The electric chair challenge was dismissed as unripe, as all inmates had the option to be executed by lethal injection and could only die in the chair if they so chose. The challenge to lethal injection by use of compounded pentobarbital was denied on its merits, and this denial was upheld by the Tennesse Supreme Court. *See West v. Schofield*, 519 S.W.3d 550 (Tenn. 2017).

11.     2018 Chancery Court Lethal Injection Suit

10

A.    I was one of thirty-three death row inmates who challenged the constitutionality of Tennessee' three-drug, midazolam-based, execution protocol.    We claimed that midazolam, a benzodiazepine is incapable of rendering a person unconscious and insensate to pain, while the second two drugs would first paralyze the inmate—preventing him from crying out, while inflicting a sensation similar to being buried alive—and then would set his veins on fire in excruciating pain.    We contended this was cruel and unusual and should not be allowed.

B.    Case caption and court: *Abdur'Rahman et al. v. Parker*, Davidson County Chancery Court, No. 18-183-II.

C.    We contended that torturing inmates for seven or more minutes before executing them violates the Federal and State Constitutional protections against cruel and unusual punishment.

D.    We sued the Commissioner of the Department of Corrections, Tony Parker, the Warden of Riverbend, Tony Mays, and John and Jane Doe executioners, medical examiners, pharmacists, physicians, and participants.

E.    The Chancery Court held that the three-drug method of execution was "dreadful and grim," but constitutional, and this holding was upheld by the Tennessee Supreme Court, which held that we failed to establish that there was a feasible alternative to the three-drug protocol.

12.    2019 United States District Court Lethal Injection Suit

11

A.    I was one of five death row inmates who challenged the constitutionality of Tennessee's three-drug, midazolam-based, execution protocol. We claimed that pentobarbital was now a feasible alternative that would reduce the risk of extreme suffering inflicted by the three-drug method.

B.    Case caption and court: *Smith et. al. v. Parker,* 3:19-cv-01138, in the United States District Court for the Middle District of Tennessee.

C.    As before, we contended that it is unconstitutional to torture inmates for a prolonged period of time prior to killing them. We contended, additionally, that new facts developed since the 2018 lethal injection suit demonstrated that pentobarbital was available.

D.    We sued the Commissioner of the Department of Corrections, Tony Parker, and the Warden of Riverbend, Tony Mays.

E.    The District Court held that this suit was barred due to the doctrine of *res judicata,* and that new evidence regarding pentobarbital was insufficient to overcome the *res judicata* bar.

12

The foregoing list is true, complete and accurate to the best of my knowledge. If any corrections to the list were needed, I have made those corrections in handwriting and have initialed those corrections. *Under Penalty of Perjury,* FURTHER AFFIANT SAITH NOT.

_Henry Hodges_
Henry Hodges

_8-27-23_
Date

Sworn to and subscribed before me this 8th day of May, 2023.

_28 USC §1746_
Notary Public

My Commission Expires:

_NOT NECCESSARY_

13



RECEIVED

Inmate Name: _____Heng  Hodges_____  TDOC Number: ___102193___

Institution: _____NSSL_____  Housing Unit: __2A108__

Institution Grievance Number: _23-0117_  TOMIS Grievance Number: _355042_

Commissioner's Response:

☑ Concur with Warden        ☐ Concur with Supervisor        ☐̶ ̶A̶p̶p̶e̶a̶l̶ ̶D̶e̶n̶i̶e̶d̶

_05-05 2023_
Date

_Remi Cannon for_
Deputy Assistant Commissioner of Prison Operations

FS-1A

C l a i m  # 1

Due Process Violation No. 23-0117

Department of Correction · 6th Floor Rachel Jackson Building · 320 Sixth Avenue North · Nashville, TN 37243 · Tel: 615-253-8180 · Fax: 615-253-1668 · tn.gov/Correction

19



Imp - 501.01 V1 (HDG)

## TENNESSEE DEPARTMENT OF CORRECTION

## INMATE GRIEVANCE

RECEIVED

APR 11 2023

Riverbend Maximum Security Institution
Grievance Office

HENRY HODGES — 102143 — RMSI
_____NAME_____  ___NUMBER___  __INSTITUTION & UNIT__

DESCRIPTION OF PROBLEM: ON MONDAY 4-3-23 AT ABOUT 10:00am
WE WERE PUT ON LOCK DOWN AND TOLD WE
WERE ALL BEING MOVED OUT OF D-POD

REQUESTED SOLUTION: TO RECOMMEND THAT I BE MOVED
TO A-109 OR A-107

Henry Hodges _____  4-5-23
_____Signature of Grievant_____              ___Date___

========================================================

### TO BE COMPLETED BY GRIEVANCE CLERK

23-0117/0035904-7        4/11/2023        Johnny
___Grievance Number___   ___Date Received___   ___Signature Of Grievance Clerk___

INMATE GRIEVANCE COMMITTEE'S RESPONSE DUE DATE:

AUTHORIZED EXTENSION: _____
                       New Due Date               Signature of Grievant

========================================================

04/18/23        INMATE GRIEVANCE RESPONSE
Summary of Supervisor's Response/Evidence: See CR-3148

04/20/23
Chairperson's Response and Reason(s): Supervisor Response Acknowledged

RECEIVED

APR 19 2023

Riverbend Maximum Security Institution
Grievance Office

DATE: 04/14/23    CHAIRPERSON: _____

Do you wish to appeal this response?  ✓ YES _____ NO

If yes:  Sign, date, and return to chairman for processing within five (5) days of receipt of first-level response.

04/25/23  (GRIEVANT) Henry Hodges    4-18-23    _____ Richard 04/19/23
                                      ___DATE___                ___WITNESS___

Distribution Upon Final Resolution:

White – Inmate Grievant    Canary – Warden    Pink – Grievance Committee    Goldenrod – Commissioner (if applicable)

CR-1394 (Rev. 3-00)                                                                      RDA 2244



**TENNESSEE DEPARTMENT OF CORRECTION**

**INMATE GRIEVANCE**     (continuation sheet)

DESCRIPTION OF PROBLEM: AND WE WERE BEING MOVED TO A-POD I WAS MOVED FROM D-102 TO A-108

A-108 IS A HIGH MAX CELL BUT I HAVE DONE NOTHING TO BE MOVED TO A HIGH MAX CELL THE CELL ON EACH SIDE OF ME IS EMPTY I COULD HAVE WENT INTO EITHER ONE OF THOSE CELLS I AM HAVING MENTAL ISSUE BEING IN THIS CELL BECAUSE THERE IS NO JUSTIFICATION FOR

Distribution Upon Final Resolution:

White - Inmate Grievant   Canary – Warden   Pink – Grievance Committee   Goldenrod – Commissioner (if applicable)

CR-1394 (Rev. 3-00)

Page 2 of 2     RDA 2244

2)



TENNESSEE DEPARTMENT OF CORRECTION

RESPONSE OF SUPERVISOR OF GRIEVED EMPLOYEE OR DEPARTMENT

DATE: 4/11/2023

Please respond to the attached grievance, indicating any action taken.

Date Due: 4/18/2023

23-0117/00359047          Hodges    Henry          102143
Grievance Number              Inmate Name              Inmate Number

Mr. Hodges I will address your allegations.

Cell changes are done for the safety and security of the facility and or population management.

Inso far as the cell you are assigned the following is noted.

In the free world you have had a very violent history.

While incarcerated you have seriously injured other inmates with weapons.

You have made threats up to and including to kill staff.

You have a long history of playing in and smearing fecal matter in your cell

You have thrown fecal matter out of your cell (Staff and inmates alike do not wish to be exposed to this.)

You have recently severely self-mutilated (removed penis)

If you have any other questions concerning being placed in a cell with a high security

mid-level service flap.

Feel free to address them to myself or your counselor.

Thank you and have a nice day.

_Unit Manager Davis_
SIGNATURE

04/13/2023
DATE

1050

RECEIVED

 Department of **Correction**

TENNESSEE DEPARTMENT OF CORRECTION
INMATE GRIEVANCE RESPONSE

APR 2 4 2023

RIVERBEND MAXIMUM
SECURITY INSTITUTION
OFFICE OF WARDEN
23-0117/00359047

| Hodges, Henry | 102143 | RMSI - 2A108 | GRIEVANCE NUMBER |
|---|---|---|---|
| NAME | NUMBER | INSTITUTION & UNIT | |

Summary and Testimony Presented to Committee    listed on the Hearing Minutes page, if applicable

Inmate Grievance Committee's Response and Reasons   No hearing was held. Grievance deemed inappropriate per TDOC Policy 501.01.

April 19, 2023
Date

CHAIRMAN

MEMBER
**RECEIVED**
MAY 0 8 2023
Riverbend Maximum Security Institution
Grievance Office

MEMBER                MEMBER                MEMBER

Warden Response:    Agrees with Proposed Response    ☐

Disagrees with Proposed Response    ☐

If Disagrees, Reasons for Disagreement   Cell changes are allowed every 6 months. Due to Prior disciplinaries (i.e. throwing feal matter on Staff). The cell change will be considered if you continue to have good behavior (i.e. recent time)

Action Taken:

DATE: May 01 2023    WARDEN'S SIGNATURE:

Do you wish to appeal this response?    ✓ YES    NO

If yes:    Sign, date, and return to chairman for processing. Grievant may attach supplemental clarification of issues or rebuttal/reaction to previous responses if so desired.

RECEIVED
GRIEVANT    5-04-23
DATE    Cpl. Ward received 05/05/23
WITNESS

Commissioner's Response and Reason(s):
MAY 0 9 2023

DOC Oper's.
DATE

**RECEIVED**
MAY 0 5 2023
SIGNATURE
Riverbend Maximum Security Institution
Grievance Office

White-Inmate    Canary-Warden    Pink- Grievance Committee    Goldenrod-Commissioner

CR -1393 (Rev. 3-00)    RDA 2244

*1088*



MEMO

Inmate Name: _Henry Hodges_     TDOC Number: _102 143_

Institution: _MSL_     Housing Unit: _20202_

Institution Grievance Number: _22-0393_     TOMIS Grievance Number: _356 230_

Commissioner's Response:

☑ Concur with Warden     ☐ Concur with Supervisor     ☐ Appeal Denied

_09-13-2023_
Date         _Lee Dotson_
Assistant Commissioner of Prisons

FS-1A

_Medical Malpractice Claim # 2_

Department of Correction • 6th Floor Rachel Jackson Building • 320 Sixth Avenue North •
Nashville, TN 37243 • Tel: 615-253-8180 • Fax: 615-253-1668 • tn.gov/Correction

501.01 VI. (H)(3)
Inp-501.01 VI. (C)(1)



**TENNESSEE DEPARTMENT OF CORRECTION**

<u>**INMATE GRIEVANCE**</u>

RECEIVED

NOV 2 9 2022

Riverbend Maximum Security Institution
Grievance Office

Henry Hodges      102143          RMSI, Unit 2
NAME             NUMBER          INSTITUTION & UNIT

DESCRIPTION OF PROBLEM: ~~I was told that If I went five months without a write up,~~ I would be eligible to receive a package-and I did that. In October, I was to receive a package. My lawyer, Amy Harwell, had ordered the package for me, and

REQUESTED SOLUTION: I want a level: the psychologist has said over and over that there is no reason why I should not have a level. The Warden keeps overruling the recomendation of the level review board and the psychologist. The Warden should quit overruling everyone else and let me have a level like is recommended on the level review paperwork. I want the prison to follow policy about suicidal people.

_Henry Hodges_                  11/22/22
Signature of Grievant             Date

===================================================

*TO BE COMPLETED BY GRIEVANCE CLERK*

22-0393/00356730      11/29/2022        _[signature]_
Grievance Number       Date Received          Signature Of Grievance Clerk

INMATE GRIEVANCE COMMITTEE'S RESPONSE DUE DATE: _____

AUTHORIZED EXTENSION: _____      _____
           New Due Date               Signature of Grievant

===================================================

12/08/22          **INMATE GRIEVANCE RESPONSE**
Summary of Supervisor's Response/Evidence: _See CR-3148_

12/08/22
Chairperson's Response and Reason(s): _Supervisor Response Acknowledged_

RECEIVED

DEC 1 2 2022

Riverbend Maximum Security Institution
Grievance Office

DATE: _12/05/22_      CHAIRPERSON: _[signature]_

Do you wish to appeal this response?    _✓_ YES      ___ NO

If yes:    Sign, date, and return to chairman for processing within five (5) days of receipt of first level response.

12/13/22   _Henry Hodges_      12-9-22      _Cpl. Offord_ _[signature]_ 12/12/22
        GRIEVANT        12-6-22           WITNESS
          DATE
    I WOUND LIKE AN expedited Appeal

Distribution Upon Final Resolution:

     White - Inmate Grievant    Canary – Warden    Pink – Grievance Committee    Goldenrod – Commissioner (if applicable)

CR-1394 (Rev. 3-00)           Page 1 of 2          RDA 2244


DESCRIPTION OF PROBLEM: had ordered the package for me, and I was pleased that I finally eligible to receive a package. ~~When it was received a package in person or phone.~~ When it was time for the package to arrive, it did not come. After a while I asked someone what had happened to my package. Word came back that I was not

in fact eligible to receive a package because I had not been without a write up for six months. I have not seen anything saying six months is the rule. I think AW Keys changed the rule to keep me from having a package. No written policy

about the six-month rule has been posted or disturbed. Because I felt real paranoid when my package was returned, I started smearing feces on a Wednesday (10/5/2 The guards quit bringing me food. If someone looks at the tapes of the cell block those days, they will see that the guards did not bring me my trays. I was

at that point, in D-102. I get that they did not like that I was smearing, but is not ok to just not feed a man just because he is mentally ill. On Friday of that week, October 7, the guards decided to take me out of my cell and clean it.

While they were cleaning my regular cell, they put me in D-101. D-101 is a high Max Cell-which is supposed to be only for people who have been violent. I should have been put in a regular cell, like D-103 while my cell was cleaned. I think they put me in the High Max Cell to push me over the edge. I smashed the sprinkl in D-101, flooding the cell. When the cell flooded, a metal part of the drain came lose and I was able to pull it into the cell and use it to break the window in D-101. The windows in the cell are double paned-I completely smashed the inside pane, it crumbled. The outside pane cracked but held in place. I also cut my wrist and the head of my penis. _when they pulled me out of the cell,_ I told the officer that I needed to go or suicide watch and showed him my wrist. Major Heroux took me to the infirmary. If you watch the video of the cell extraction and it has sound, you will hear me yelling, "I need to go to suicide watch." Major Heroux took me from D pod throug E Pod to the infirmary. There was a woman with him who I did not know. I now know that she is one of the psych people, but I had never seen her before. She came to my cell for the extraction. She saw the cracked window. On the way to th infirmary, Major Heroux told the woman that they should not put me on suicide watch in the infirmary, that they should bring me back to the unit. He claimed that I was just trying to manipulate the woman. I could not hear what the woman said to Major Heroux, but the idea that they would not put me on suicide watch in the infirmary really upset me. I think protocol should always be followed. It is the only thing people incarcerated in this place can count on-or should be able to count on: that the prison follows its own rules. After Major Heroux said all that stuff, I refused medical treatment. I kept telling everyone in the infirmary that I should be put on suicide watch. Instead Major Heroux said I could be on suicide watch in the unit and took me back to D-101. Major Heroux had me put back in the cell where I had just cut my wrist and my penis. I had several razor blades hidden in that cell. They took all my clothes away from me, but did not give me a suicide smock. I was in there naked. I went to the back of



DESCRIPTION OF PROBLEM: ~~the cell, got my razer, and cut my penis off. It took a little while and it bled a lot. I bled bad.~~ On November 21, when I was brought back to the prison from VUMC, I was in a wheelchair, handcuffed. When they wheeled me into the infirmary, they took me to the suicide watch wing and took me straight out of the wheelchair and put me in four point restraints on a mattress on the cement slab in that room. I told an Officer ~~Rouse Kemp D Work S~~ White, that I was not going to fuck with them, but they put me in the restraints anyway. And they turned on the lights. All I could do was lie there, strapped to my back. Naked. Looking up into a bright fluorescent light, while lying on a concrete slab with just a plastic mat beneath me. Later that night, I pooped in my bed. I did not have any choice, I was strapped down. They left me lying in my poop for at least three hours that is not right. After I pulled out my catheter, they put me in six-point restraints for several days. I had bands on my wrists and ankles and also around my biceps. I could not move my arms hardly at all. My arms became quite painful. By the next day after they tied me down, my right arm was numb. I suspect I have some nerve damage from where they had me tied down. After a few days in the restraints, my legs did not work at all. I could not move them someone had to do it for me. When they first started getting me up, all I could walk was up and down the length of that slab they had me tied to. I had to have people hold me up. We then worked up to me walking up and down the hall with the staff helping me walk. It was painful trying to walk again after all that time lying tied down.



**TENNESSEE DEPARTMENT OF CORRECTION**

**INMATE GRIEVANCE**     (continuation sheet)

DESCRIPTION OF PROBLEM: Requested Solution - Continued

I want Major Heroux to be disciplined or fired for going against policy and putting me back in that cell instead of keeping me safe when I was telling him (and that psychology lady) that I was suicidal. If I ever get suicidal again when I am back on the unit, I want to be taken seriously and treated like a human being; that is, I want people to use real, appropriate suicide precautions and not do stupid things that are against policy.

I want to be able to recive a Christmas Package and the incentive meals. I also want to be able to receive regular packages like everyone else at the assigned package month. I want the prison to follow its own policies about stuff like this and not make special rules up just for me. If you change a rule, you should have to print it out and post it and tell people about it, not just tell them after they count on the old rule. If you make a new rule after someone relies on the old rule (like I did, having my lawyer order my package), then you should let the old rule count for that time - until there has been notice and people know what the new rule is.

I want the prison to forgive all my debt. Y'all have run up a big tab counting up all the stuff I break and damage I do. I think that at this point we should be even. You did a lot of damage to me - tying me down, making my penis not have blood flow such that it had to be removed. I think you should say that my debts are erased (zero balance) and I can have packages, be able to order from commissary, and have money on my account.

I want a penis transplant. I feel like the prison's mistreatment of me after I came back from the hospital caused the reattachment to fail. I think the prison and Vanderbilt conspired against me to make sure I did not end up with a penis.

Distribution Upon Final Resolution:

White - Inmate Grievant    Canary – Warden    Pink – Grievance Committee    Goldenrod – Commissioner (if applicable)

CR-1394 (Rev. 3-00)                    Page 2 of 2                    RDA 2244



**TENNESSEE DEPARTMENT OF CORRECTION**

RESPONSE OF SUPERVISOR OF GRIEVED EMPLOYEE OR DEPARTMENT

DATE: 12/02/2022

Please respond to the attached grievance, indicating any action taken.

Date Due: 12/06/2022

| 22-0393/00356730 | Henry Hodges | 102143 |
|---|---|---|
| Grievance Number | Inmate Name | Inmate Number |

Investigation into your grievance has revealed that this grievance is inappropriate

Classification matters/instyional placement are inappropriate to Grievance Procedures.

Grievances must be filed within seven calendar days of the occurence giving rise to the grievance.

A complaint shall not address multiple issues

SIGNATURE

12/2/2022
DATE

White - Inmate Grievant    Canary – Warden    Pink – Grievance Committee    Goldenrod – Commissioner

CR-3148 (Rev. 3-00)

RDA 2244

29

IN THE UNITED STATES DISTRICT COURT FOR
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

RECEIVED

SEP 0 7 2023

U.S. District Court
Middle District of TN

Henry Eugene Hodge,
PLAINTIFF

V.

TENNESSEE DEPARTMENT,
OF CORRECTIONS,
DEFENDANT,

BILL LEE, GOVERNOR,
STATE OF TENNESSEE,
DEFENDANT,

TRIAL COURT NO. _____
(JURY TRIAL DEMAND)

LISA HELTON, EX-INTERIM
T.D.O.C. COMMISSIONER OF
CORRECTIONS, DEFENDANT,

FRANK STRADA, CURRENT
T.D.O.C. COMMISSIONER OF
CORRECTIONS, DEFENDANT,

CORPORAL SHANREKA WARD,
RMSI GRIEVANCE CLERK,
DEFENDANT,

FRANK HEROUX,
RMSI MAJOR,
DEFENDANT,

DENNIS DAVIS,
RMSI UNIT 2 MANAGER,
DEFENDANT,

TONY MAYS,
RMSI EX-WARDEN,
DEFENDANT,

CENTURION OF TENNESSEE,
DEFENDANT,

EARNEST LEWIS, RMSI
EX-WARDEN OF SECURITY,
DEFENDANT,

KAREN MILNER,
RMSI U-2  EX-PSYCHOLOGIST,
DEFENDANT,

ZACHARY POUNDS,
RMSI CURRENT WARDEN,
DEFENDANT,

KYLA SOLOMON,
RMSI CENTURION HSA

MICHAEL KEYS, RMSI
WARDEN OF TREATMENT,
DEFENDANT,

WARREN  TATE,
RMSI EX-U2 COUNSELOR,
DEFENDANT,

JANE/JOHN DOE,
DEFENDANT.

1

## EMINENT DANGER CIVIL RIGHTS COMPLAINT
## TITLE42 U.S.C. § 1983; AND 42 U.S.C. § 1997

## REQUEST FOR IMMEDIATE INJUNCTIVE RELIEF; AND
## DECLARATORY RELIEF

## I. INTRODUCTION

Comes now the Plaintiff, Henry Hodge # 102143, with aid of Prisoner Jon Hall # 238941 "next friend," under Tenn.R.Civ.P., Rule 17.01, with filing assistance, to file this Pro SE' pleading, to move this Honorable Court pursuant to Tn.R.Civ.P., Rule 57, Fed.R.Civ.P., Rule 57, to issue both declaratory relief for Mr. Hodge. To prevent further acts regarding the cruel and unusual punishment to Mr. Hodge under T.C.A. § 4-5-223, and 28 U.S.C. § 2201; and Injunctive Relief under Tn.R.Civ.P., Rule 65, or Fed.R.Civ.P., Rule 65, T.C.A. 28 U.S.C. § 2281. For the ongoing constitutional deprivations arising from inadequate, informal unpromulgated governmental custom, or policy, specifically 503.03, imposing multiple administrative punishments for one offense. Stuart, 963 S.W.2d 28, 33 (Tn. 1998); Hall v. Trump, 3:19-cv-00628 (D.E. 126, 127, and 134). An ill-conceived policy, lacking adequate standards for classification, programs, and poor mental health treatment as required by Title 18 U.S.C. § 3621 (h)(6) (programs); relevant to his related Causes of action, in violation of Plaintiff's right to petition the government for redress of grievances, and cruel and unusual punishment, under relevant Tennessee and United States Constitutional Rights held by the, First, Fifth, Eighth, and Fourteenth USCA Amendments. Hall v. Trump, 3:19-cv-00628 (D.E. 146, PageID 1652-56; and # 1681-1698) (Death row plan - analysis).

## II. JURISDICTION

The Plaintiff Henry Hodge # 102143, is a human being held by the Tennessee Department of Corrections, an inmate defined by T.C.A. § 41-21-107, housed at Riverbend Maximum Security Institute in Nashville Tennessee. Prisoner Jon Hall, is an eyewitness to much of these outrageous

2

misconduct allegations, and filing this complaint for relief under **F.R.C.P., RULE 3,** on his behalf to protect his interests, as well as plaintiff's class, i.e. Tennessee death row prisoners. Jurisdiction is proper under Article III, § 2, of the United States Constitution, and Title 28 U.S.C. § 1367.

The Defendants are all State Officials or under contract acting on behalf of the state and acted deliberately indifferent to the plaintiff's mental health and physical needs, by depriving the plaintiff of the necessities of life (sanity and penis), outside the scope of employment and overriding medical commands, by nonmedical personnel, in a manner that violates the Federal Constitution, acting under the color of State law for the Tennessee Department of Correction. State officers that violate Federal law may be sued for injunctive and Declaratory relief, in an individual or official **"Capacity."** It is irrelevant that the party of interest is a prisoner. <u>Monell v. Department of Social Service of New York</u>, 98 S.Ct. 2018 (2021) (officer acting under state law in a manner violating the Federal Constitution is liable); and <u>Scheuer v. Rhodes</u>, 94 S.Ct. 1683, 1687 (1974) (Ex Parte Young, doctrine). All defendant's whether acting as part of a government entity, or whether as an individual employee, they should have been aware of the risk of psychological injury caused by nearly thirty years of administrative, mixed with spurts of punitive solitary confinement, would cause a psychotic break. Common sense and human experience provide knowledge and awareness, that the withholding of food and the deprivation of basics of life's necessities, i.e. food, medical attention, and sanity, caused Mr. Hodge to act-out in an unpredictable manner, causing an atypical and significant hardship on the plaintiff for the rest of his life (an abused and neglected, actively psychotic prisoner), provoking him to act out in an irrational, and desperate manner, causing Mr. Hodge's irremediable and serious injury to his person. <u>Richards</u>, 926 SW2d 569, 571 (Tn.App. 1996) (Necessities of life); <u>Madrid</u>, 889 F.Supp. 1146, 1265, n. 209 (Sanity is a necessity of life). Prisoner Jon Hall brings forth this complaint, with Mr. Hodge's verbal assent, despite being severely injured physically & mentally disabled, caused by defendant's actions, as follows:

3

# INITIAL PRO SE CIVIL RIGHTS COMPLAINT

## III. GROUNDS FOR EMINENT DANGER PETITION

1. Plaintiff Henry Hodge is a prisoner # 102143 on Tennessee's death row, and requesting to be executed. Through the assistance of a next friend (Jon Hall), makes the following next friend allegations against Defendant's. See: e.g. Jon Hall v. Donald Trump, 3:19-cv-00628 (D.E. # 132; next friend grievance); and based on Hall's personal firsthand knowledge, on information & belief, that the following listed documents governing Plaintiff Hodge's conditions of confinement on death row; along with records of Plaintiff's judicial proceedings in state and federal courts and in the Sixth Circuit Court of Appeals; the Plaintiff's medical and mental health records while incarcerated on death row; and Plaintiff's Disciplinary history on death row; records of Unit Review Panel Hearings pertaining to Plaintiff's conditions of confinement; letters, grievances and appeals plaintiff has provided to the undersigned, and to this court relating to his conditions of confinement and his medical condition and treatment; mental health evaluations conducted in connection with Mr. Hodge's post-conviction proceedings; Scholarly journals, and expert reports related to the physical (Hall, 3:19-cv-00628 (D.E. # 146, 1682-1710; Martin Horn Expert report on RMSI); and psychiatric effects of solitary confinement; http://openscholarship.wustl.edu/law_journal_lawpolicy/vol22/iss1/24 ;+ and court opinions cited related to living conditions on death row, establish the deliberate indifference to serious medical needs; and other readily available information. Mr. Hall believes Mr. Hodge's is irrational in his thinking process, and with proper handling of all the substantial, additional evidentiary support Mr. Hodge known to exist that will show that the allegations set forth in this First Complaint, will convince any reasonable jurists, after proper consultation with experts and a reasonable opportunity for discovery, Hall's interest is viable by clear and convincing evidence, that Mr. Hodge's constitutional rights have been violated, entitling him to a just remedy at law In re Medley, 134 U.S. 160, 171 (1890); & Harmelin, 501 U.S. @ 973-76 (1991) (illegal punishment).

4

2. Plaintiff Henry Hodge does not have any post-conviction litigation pending in the Court system. He is represented in those proceedings by the Federal Public Defender for the Middle District of Tennessee. In addition, the Office of the Federal Public Defender for the Middle District of Tennessee has experience litigating death row prisoner's claims, situated in similar circumstances as the petitioner is now bringing,

3. Mr. Hall is not an attorney at law, and respectfully requests for Mr. Hodge's benefit, the following: (1) appointment of counsel; (2) time to supplement this complaint, or amend if necessary; and (3) to substitute or add additional parties if, after a proper investigation, including consultation with experts and the Federal Public Defender's Office, it is determined Mr. Hodge has claims that are appropriately joined brought in this proceeding regarding Tennessee's execution of Mr. Hodge. Such claims may include, but are not limited to, whether the State's implementation of a death row level program and prolonged isolation, without adequate procedures, to challenge said implementation of said policies is constitutional amounting to ex post facto laws, as applied to Mr. Hodge.

## IV.  PARTIES OF THE CASE

The **Plaintiff** is Henry Eugene Hodge, T.D.O.C. # 102143. He resides at Riverbend Maximum Security Institute, located at 7475 Cockrill Bend Blvd., Nashville Tennessee 37209-1048. The prison phone number is 615-350-3100.

The **First Defendant,** is Tennessee Department of Corrections (TDOC), their main office address is at, the Rachel Jackson Building, 6th floor, 320 6th Ave N., Nashville, Tennessee 37243-1400. TDOC is being sued in its individual and official capacity, knew of the risks of harm of prisoners held solitary confinement, that transgress constitutional standards of decency, and the Federal Court is empowered to fashion an appropriate remedy. Groseclose v. Dutton,  609 F.Supp. 1432, 1447 (1985) (Death Row prisoner's need of freedom is the same as those  similarly classified in general population).

5

The **Second Defendant**, is Governor Bill Lee, he is the State's Chief Executive Officer. he is the elected official responsible for the management of State, and relevant here the State Penitentiaries. Governor Bill Lee's address is State Capital, 1st floor Nashville, Tennessee, 37243-001. His phone number is 615-741-2001. He is being sued in her individual and official capacity.

The **Third Defendant** is Lisa Helton, ex interim Commissioner of the Tennessee Department of Correction, (replaced by Frank Strada) who under **T.C.A. § 4-6-103** she was responsible for the management of State Penitentiaries. The Ex-Commissioners address was last known to be at, the Rachel Jackson Building, 6th floor, 320 6th Ave N., Nashville, Tennessee 37243-1400. She is being sued in her individual and official capacity.

The **Fourth Defendant** is Frank Strada, the Governor's appointed Commissioner of the Tennessee Department of Correction, currently his duties under **T.C.A. § 4-6-103** shows he was responsible for the management of State Penitentiaries. The Commissioner's administrative address is, the Rachel Jackson Building, 6th floor, 320 6th Ave N., Nashville, Tennessee 37243-1400. He is being sued in her individual and official capacity.

**The Fifth Defendant** is, Major Frank Heroux. He was responsible for the management of security at Riverbend Maximum Security Institute, located at 7475 Cockrill Bend Blvd., in Nashville Tennessee 37209-1048. The prison phone number is **615-350 3100**. Major Frank Heroux is being sued in both his individual and official capacity.

The **Sixth Defendant** is Tony Mays, Ex-Warden of Riverbend Maximum Security Institute, who under **T.C.A. § 41-1-104, and § 41-21-201**, and was responsible for the management of Riverbend Maximum Security Institute, located at 7475 Cockrill Bend Blvd., in Nashville Tennessee 37209-1048. His prison phone number was **615-350 3100**. Tony Mays is being sued in both his individual and official capacity.

6

The **Seventh Defendant** is Earnest Lewis, he was Warden of Security at Riverbend Maximum Security Institute, located at 7475 Cockrill Bend Blvd., Nashville Tennessee, 37209-1048. The prison phone number is 615-350-3100. Warden Lewis is being sued in his individual and official capacity.

The **Eighth Defendant** is Zachary Pounds, replacement for Tony Mays, Warden of Riverbend Maximum Security Institute, who under **T.C.A. § 41-1-104, and § 41-21-201**, and is currently responsible for the management of Riverbend Maximum Security Institute, located at 7475 Cockrill Bend Blvd., in Nashville Tennessee 37209-1048. The prison phone number is **615-350 3100**. Warden Zachary Pounds is being sued in his individual and official capacity.

The **Ninth Defendant** is Michael Keys, Assiostant Warden, of Treatment, at Riverbend Maximum Security Institute 7475 Cockrill Bend Blvd., Nashville Tenn., 37209. Mr. Keys is being sued in his individual and official capacity.

The **Tenth Defendant** is corporal Shanreka Ward, a Grievance Clerk at Riverbend Maximum Security Institute, located at 7475 Cockrill Bend Blvd., Nashville Tennessee, 37209-1048. The prison phone number is 615-350-3100. Ms. Ward being sued in her individual and official capacity and has responsible under T.C.A. § 41-21-817, and § 41-24-110. Shanreka Ward is being sued in his individual and official capacity.

The **Eleventh Defendant is** Dennis Davis RMSI UNIT 2 MANAGER, 7475 Cockrill Bend Blvd., Nashville Tennessee, 37209. Phone number is 615-350-3100. Dennis Davis is being sued in his individual and official capacity.

The **Twelfth Defendant** is Centurion of Tennessee, the contract medical provider responsible for the Tennessee Department of Corrections inmate medical care. Centurion of Tennessee's office address is 53 Century Blvd., ste. 150, Nashville, Tennessee, 37214. The phone number is 615-884-3110 or 855-542-8058. Centurion is being sued in their individual and official capacity.

7

The **Thirteenth Defendant** is HSA Kyla Solomon, and is employed by Centurion of Tennessee and is responsible for inmate medical care at RMSI, located at 7475 Cockrill Bend Blvd. Nashville Tennessee, 37209-1048. Kyla Solomon is being sued in her individual and official capacity.

The **Fourteenth Defendant** is Mr. Warren Tate, he was employed as Unit - 2 Counselor at Riverbend Maximum Security Institute, who under **T.C.A. § 41-21-505** was responsible for the case management of prisoners at Riverbend Maximum Security Institute, located at 7475 Cockrill Bend Blvd., in Nashville Tennessee 37209-1048. The prison phone number is **615-350 3100**. Warren Tate is being sued in his individual and official capacity.

## III. EIGHTH AMENDMENT BAN ON CRUEL & UNUSUAL PUNISHMENT

### A. STANDARD OF REVIEW

The Courts have held that a Pro Se' Pleading should be held to a less stringent standard than a formal pleading drafted by lawyers. The test is whether it appears beyond a reasonable doubt the Plaintiff can prove no set of facts in support of his claim, which would entitle him to relief. See **SILVA V. DIVITTORIO**, 658 F.3d. 1090, 1101 (9th Cir. 2011); **JOHN V. HURT**, 439 F.2d 786 (7th Cir. 1973); **BAXTER V. ROSE**, 523 S.W.2d 930 (1995). Summary of the standards for determining whether the Eighth Amendment is violated. Court decisions provide three general principles of Eighth Amendment law governing prison life emerge from their opinions.

The first principal, is established by ESTELLE, **RHODES**, and **FARMER**, is that the Eighth Amendment applies to cases involving prison conditions and practices. The second principal, established by **WILSON** is that the Eighth Amendment has both a subjective and an objective component. For an inmate to be successful in a challenge to prison policies or practices based on the Eighth Amendment, both components must be satisfied. The final general principle is that the test for the subjective component will depend on the particular Eighth Amendment claim to be raised.

8

If the claim is one involving prison conditions **(WILSON)** protection from inmate violence **(FARMER)** or medical care **(ESTELLE)**, for example, deliberate indifference is the standard. **NOTE:** The standard for **"adequate medical care"** for prisoners requires treatment by qualified medical personnel who provide services that are a quality acceptable when measured by prudent professional standards in the community, tailored to an inmate's particular needs, and are based on medical considerations. See **FERNANDEZ V. U.S.**, 941 F.2d. 1488, 1493 (11th Cir. 1991); accord, **U.S. V. DECOLOGERO**, 821 F. 2d. 39, 43 (1st Cir. 1987). Additionally, in **HELLING V. MCKINNEY**, 509 U.S. 25, 33, 113 S. Ct. 2475 (1993), the Court has held **"a remedy for unsafe conditions need not await a tragic event ."** The Court also cited as an example the exposure to infectious diseases.

## B. The objective component of the Eighth Amendment

**The Eighth Amendment, which** forbids **cruel and unusual punishments"** governs the treatment of convicted prisoners. **U.S. CONST. AMEND. VIII.** To win an **Eighth Amendment case** you must establish both an **"objective component,"** the seriousness of the challenged conditions, and a **"subjective component,"** the state of mind of the officials who are responsible for them. **FARMER V. BRENNAN**, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994).

Prison conditions that are **"restrictive and even harsh are part of the penalty that criminal offenders pay for their offenses against society."** **RHODES V. CHAPMAN**, 452 U. S. 337, 347101S. Ct. 2392 (1982). Conditions do not violate the Eight Amendment unless they amount to the **"unnecessary and wanton infliction of pain." RHODES V. CHAPMAN**, 452 U.S. at 347; **WILSON V. SEITER**, 501 U. S. at 297.

That phrase can mean several different things in prison litigation. With respect to living conditions, prisoner must demonstrate **"unquestioned and serious depravations of basic human needs"** or of the **" minimal civilized measure of life's necessities,"** to establish an Eighth Amendment violation.

9

**RHODES V. CHAPMAN**, 452 U. S. at 347; accord, **WILSON V. SEITER**, 501 U. S. at 308. The Supreme Court has listed as basic human needs food, clothing shelter medical, and reasonable safety. **HELLING V. MCKINNEY**, 509 U..S. 25, 33 113 S. Ct. 2475 (1993), as well as warmth and exercise. See **WILSON V. SEITER**, 501 U. S. at 304.

The Supreme Court decisions concerning prisoners Eighth Amendment claims have emphasized **physical harm, or the risk of it.** The Court has held that unsafe conditions that **"pose an unreasonable risk of serious damage to [prisoner's] future health"** may violate the Eighth Amendment even if the damage has not yet occurred and may not affect every prisoner exposed to the conditions. **HELLING V. MCKINNEY** 509 U. S. 25, 33, 113 S. Ct. 2475 (1993), **(the remedy for an unsafe conditions need not wait a tragic event").**

The Eighth Amendment standard draws it's standards of decency that mark the progress of a maturing society. **RHODES V. Chapman**, 452 U. S. 337, 347, 101 S. Ct. 2392 (1981), (quoting **TROP V. DULLES**, 356 U. S. 86, 101, 78 S. Ct. 590 (1958); accord, **HELLING V. MCKINNEY**, 509 U. S. 25, 33, 113 S.Ct. 2475 (1993). In cases involving risks to health or safety, courts **"assess whether society considers the risk that the prisoner complains of so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. "** In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

In **HELLING**, the case concerned exposure to tobacco smoke; other examples cited by the Court included exposure to infectious disease. See **HILL V. MARSHALL** 962F. 2d. 1209, 1213-14 (6th Cir. 1992) (risk of developing tuberculosis). **The above stated case opinions meet the requirements necessary to establish the objective prong of the Eighth Amendment violations contained in the (8) eight causes of action of this complaint.**

## C. The Subjective Component of the Eighth Amendment

In Eighth Amendment, condition cases the Plaintiff must prove that the Defendants acted with **deliberate indifference."** In **WILSON V. SEITER**, 501 U. S. 294, 303, 111 S.Ct. 2321 (1991), the Court decided that deliberate indifference was the appropriate state of mind required for condition cases. Deliberate indifference in Eighth Amendment cases falls somewhere between mere negligence (carelessness) and actual malice (intent to cause harm). Id. 501 U. S. at 297-304; See also **FARMER V. BRENNAN,** 511 U. S. at 835-36; That is that amounts to recklessness Id. 511 U. S. at 836. Sometimes deliberate indifference is shown directly by evidence of prison personnel's bad motives or attitudes. However, the Supreme Court has held that a prison official can be found reckless or deliberately indifferent if **"the official knows of and disregards an excessive risk to an inmates health or safety......."** Id. **FARMER V. BRENNAN,** 511 U. S. at 837. This is the same standard recklessness used in criminal law. The fact that a condition or a risk was obvious is circumstantial evidence that will permit a Judge or a Jury to conclude that a Defendant did know about it, even if there is no direct evidence the Defendant knew. Id. **FARMER V. BRENDAN,** 511 U. S. 842-43; Id. at 837. The above stated case opinions meet the necessary requirement to prove the subjective prong of the Eighth Amendment violations contained in thecause of action in this complaint. Defendant's had knowledge Sexton, 948 SW2d @ 751 (Tn. 1997); & notice of danger by experts @ supra page 4. Hawks, 960 SW2d @ 15-16 (Tn.App. 1997).

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

A timely grievance was filed in this matter on Mr. Hodge's behalf, by "next friend" Jon Hall, and filed in Jon Hall v. Donald Trump, 3:19-cv-00628, D.E. # 132, with attachments by Jon Hall at https://ecf.tnmd.uscourts.gov/cgi-bin/DktRpt. Furthermore, there is no available remedy for the relief Mr. Hodge seeks, since it is a dead-end procedure. See Hugueley v. Parker, 2020 WL 4753845 * 8 (MD Tenn. 2020 (Mattox 851 F.3d 583, 590 (6th Cir. 2017)).

11

# V. CAUSES OF ACTION:

## COUNT 1: RETALIATION DENIAL OF RIGHT
## TO PETITION GOVERNMENT FOR REDRESS OF GRIEVANCES

1. Corporal Shanreka Ward, is at least a second generation paper-pusher at R.M.S.I., following her Mother Dee Scott's corrupt interpretation and instruction of prison policy. Ms. Ward follows in her mother's corrupt ways and is currently the grievance chairperson, by taking adverse actions against prisoner's for filing grievances, by: (1) failing to pickup inmate grievances daily (as per required by Warden Mike Key's testimony in prior lawsuits during sworn videotaped deposition); to thwart and deny prisoner's adequate procedures for filing in conformance with grievance deadlines. This procedure is irreparably broken by all the grievance procedure policy violations that have taken place under her charge (audit), that should have been legitimately followed, in accordance with the shall, will, or must mandatory language, that govern the prison systems practice and operation of the policy in place.

2. From my own perspective, and from years of hearsay by other prisoner's, that almost every prisoner can testify to this broken process, as found and expressed by Judge Trauger, in the matter of Stephen Huguelev v. Tony Parker, 2020 WL 4753845 * 5 (M.D. Tn. 08/17/20) (citing Ross v. Blake, 136 S.Ct. @ 1859 (2016); TDOC/RMSI grievance procedure is a dead-end street).

3. Out of retaliation against prisoner's for filing grievances, Ms. Ward almost always perfunctorily deems each legitimate grievance (inappropriate to grievance procedure). To deny inmates a hearing, and make almost every claim presented, an ipse dixit claim, without a chance to lay a chain of custody foundation, or grant an opportunity to present rebuttal arguments. Holloman, 835 S.W.2d 42, 46 (Tn.App. 1992); Kilpatrick, 52 S.W.3d 81, 87 (TnCr. 2000).
to introduce evidence, or grant an opportunity to present rebuttal arguments.

4. Thereby leaving the prisoner with only one option available to remedy to a the situation, i.e. the hassle and expense of filing more paper work, to file a set of in forma pauperis forms, or pay court costs, to allow defendant's more of an opportunity to make a prisoner suffer through the delay on unconstitutional

deprivations, that could have been legitimately resolved and corrected by defendant's at the earliest opportune time, as expressed by TDOC policy.

5. Thus, requiring the prisoner to seek legal help to exhaust the prisoner's remedy through the United State's judicial system, for all intents and purposes, to generate revenue for the Corporation of the United States of America, or squashing a reasonable prisoner's exercise of his first amendment rights, in violation of <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 394 (6th Cir. 1999).

6. The Plaintiff incorporates by reference each and every claim presented in the preceding factual sections as set forth herein, to sustain this cause of action.

## COUNT II: 8TH & 14TH AMENDMENTS
## (CRUEL AND UNUSUAL PUNISHMENT)

### HENRY HODGE'S EXPRESSED CLAIMS:

7. In an effort to show the plaintiff's second claim, regarding the Atypical and significant hardship claim addressing the Cruel and Unusual Punishment that he has endured, Prisoner Jon Hall, asked Mr. Hodge to present just the facts, and he provided the following claims in his own handwriting, and we present these facts as **Plaintiff's exhibit 1,** presenting these verbatim facts for review:

### EMINANT DANGER PETITION

Comes the plaintiff to ask this court to waive my filing fees due to eminant danger posed to me

On 7-7-22 I cut my wrist and ask to go to suicide watch and **Karen Milner (Psyche doctor)** she turned my mental health treatment over to a prison guard **(Major Frank Heroux)** and he ordered me back to the cell where I had cut my wrist within 20 minutes of me being back in my cell I cut my penis off

I am not the most mentally stable inmate at this prison. I think of suicide on a daily basis and there are days which I am focused on nothing but suicide but I won't get appropriate mental health care (see above paragraph)

13

After cutting my penis off I went to Vanderbilt Hospital for 2 weeks and had my penis reattached but it didn't take and I lost it around 7-21-22 I came back to RMSI and was immediately placed in 6 point restraints in a suicide watch cell on the orders of **Kent Colburn (Doctor)** He never spoke to me He didn't know I was wheel chair bound He didn't know the last two days in the hospital I passed out twice trying to walk and I had to have blood transfusions I was not a threat to myself or anyone and there was no justification for the 6 point restraint its just an example of the mental health care at the prison

Around June 26, 2023 **Unit Manager Dennis Davis** come to me and ask how was I doing and I said not good He ask if I was going to ho hurt myself I told him its none of your business    3 hours later security came and searched my cell for razors he believed I might cut on myself but he never called psyche service I filed a grievance about this and **Jennifer Davis** responded and claimed    I was suicidal    I have never met Jennifer Davis she doesnt have any knowledge of my mental health

I have thought of eating razor blades or using a razor blade to cut my throat or hang myself or set my cell on fire (smoke inhalation) whatever I do will be denied appropriate mental health treatment one of the claims I want to bring is against centurian for medical malpractice if it wasnt for their malpractice I would still have a penis

These people will let me kill myself and then pretend they didnt see it coming

I need this civil suit if for no other reason than to focus on something other than suicide

I do have several suits dismissed as frivolous but they were not malicious they were due to my youth and ignorance of the law    those cases were around 1997 and 1998    I had won a case  5 guards were found liable for excessive force

Waiving my filing fees would give me some kind of hope that I can get some relief in some way other than suicide I would appreciate any thing you can do for me

Respectfully

Henry Hodge

Mr. Henry Hodge also hand wrote out these following (3) claims:

14

# CLAIM 1: DUE PROCESS VIOLATION

1 There are only 44 death row inmates  but the death row unit has 4 pods with almost 100 cells

2. On 4-3-23 The prison administration decided to put all the death row inmates in 2 pods

3. On 4-3-23 I was in D-pod cell 102 a non punitive segregation cell I was moved to A-pod cell 108 which is a punitive segregation cell with no disciplinary report no way to appeal

4. I filed a grievance about it and it was deemed inappropriate   Unit 2 Manager Davis responded to my grievance

5. UM-2 Davis doesn't deny I was put in a punitive segregation cell Although he describes it as a "high security mid-level service flap

6. These are the reasons UM-2 Davis uses to justify putting me in this cell (1) "in the free world you have had a very violent history" first of all UM-2 Davis doesn't know what I did on the streets   seconds   I havent been on the street in 33 years But he put me on punitive segregation for it???

7. (2) UM-2 Davis states I "have seriously injured other inmates with weapons" in 1994 almost 3 decades ago I cut one inmate

8. UM-2 has violated my due process right He put me in a punitive segregation cell without justification or a disciplinary report or any way to appeal it

9. Being placed in this cell has caused me mental instability   I was in one of these cells for 12 straight year needless to say I have an aversion to these cells

10. UM-2 Davis also moved the inmates on both sides of me in an effort to isolate me the last times they put me in one of these cells was 7-7-22 and I cut my penis off

11. The death row unit is separate from the rest of the prison it has its own punitive segregation cells   right now there are 4 active cells but only 2 are in use

12. I am in solitary confinement without justification I was ---- (cutoff)?

13. I am on administrative segregation in a punitive cell     I have not gotten a disciplinary report so I can't appeal this   I filed a grievance but it was deemed inappropriate   The staff moved on both sides of me in what seems like an attempt to insulate me   This whole situation has caused me mental instability and to become suicidal

14. As long as I am in punitive segregation     I cannot participate in the death row level program with all other inmates

15. When prison staff failed to write me up I not allowed a disciplinary hearing to argue the change and I cant appeal a D-Board hearing I didn't have I am stuck and this court is my only hope for relief

16. Ex warden Tony Mayes signed off on the grievance I filed but he did nothing but justify me being on punitive segregation     He had a responsibility to correct the situation but didn't

17 Kevin Genovese is Deputy Assistant Commissioner of Prison Operations He had a responsibility to correct the situation but didn't

18. Today is 8-4-23 and I have been on punitive segregation since 4-4-23 (4 months) no disciplinary reports no appeals     I seem to be on an indefinate punitive segregation and isolation and out of the level program for no justifiable reason

19. Prison policy used to state you could only be put in punitive segregation cell if you have or was being violent and I dont think the policy has changed I have not been violent

Mr. Henry Hodge also hand wrote out these following claims # 2.

16

# :CLAIM 2: MEDICAL MALPRACTICE

1. RMSI prison clinic has 4 suicide cells   Each cell has a camera   The occupant can be watched 24/7   These cells are in the clinic   So if the occupant hurts himself the medical staff is right there   These 4 cells are the most secure at this prison

2. On 7-7-22 I cut my wrist and needed stitches I was taken to the clinic where I refused treatment   I told Karen Milner (Psyche service) that I wanted to go to suicide watch

3. Karen Milner turned my medical treatment over to a prison guard (Major Frank Heroux) He order me placed back in the cell I had come out of

4. This cell had a busted window and Maj Frank Heroux knew there may be more razors in it because he searched it for razors

5. I was placed in this cell butt naked and within 20 minutes I had cut my penis off Maj Frank Heroux has no experience or training in mental health treatment

6. If Karen Milner had put me in a suicide watch cell I I would still have my penis   Her failure constitutes medical malpractice   Centurions failure to provide experience and trained medical staff constitutes medical malpractice

7. I was taken to Vanderbilt Hospital and had my penis reattached   I stayed there 2 weeks and necrosis set in and I was told I would lose my penis

8. On 7-21-22 I was returned to RMSI and was immediately taken to a suicide watch cell and placed in 6 point restraints and I remained in these restraints between 7 and 14 days

9. The criteria for being strapped down is you have to a threat to yourself or someone else

10. **Kent Colburn** is the man who ordered me strapped down but I have never met Mr Colburn he couldnt have known if I was a threat to myself or someone else no one even talked to me I was just strapped down

11. If someone had spoken to me they would have learned that the last 2 days I was in a hospital Tried to walk and passed out and had to have a blood transfusion both times.

47

12. If someone had ask they would have learned I was in no condition to be a threat to myself    Kent Colburn ordering me strapped down without ever talking to me is an act of medical malpractice and Centurians failure to provide experienced and trained medical staff is medical malpractice

# CLAIM 3: DEATH PENALTY IS CRUEL AND UNUSUAL PUNISHMENT

Grievance #23-0225/0036031l

Grievance #23-0225 Listed Plaintiff Ex. 3

1. I was sentence to die in January 1992 (31½ years) the U.S. Supreme Court has upheld my conviction in 2015 (8 years) since my conviction was upheld The Tennessee Supreme Court has not set me one execution date

2. My conviction was upheld in 2015 and since then I have I have motioned the Tennessee Supreme Court 5 times to set me an execution date and would accept the electric chair as the method

3. I have been in limbo for 8 years waiting for an execution date    How much longer will I be in limbo waiting for a date    This is cruel and unusual punishment    Because I am willing to accept the electric chair    The State could carry out my sentence tomorrow but instead they keep me in limbo

4. Death row has a level system to give inmate more freedom for good behavior    of the 31½ years I have been here I had a level for 2 years and the other 29½ years I was locked down

5. In Sept. of 1996 I was sent to Brushy Mountain Prison upon arrival I was severely beaten by the guards    I filed a civil suit and 5 guards were found liable for excessive force

6. In 2001 or 2002 I dropped my appeals because of the way I was being treated    The Court held a hearing and then Warden Ricky Bell testified my attorney Kelly Henry asked Mr. Bell if he would give me a level and he said yes

7. A year later the unit staff officers Madar and Perry recommended me for a level    Warden Bell denied the level and move Madar and Perry out of the unit

8. Spent 12 straight years in a punitive segregation cell but not for my behavior    I was supposed to be an example for the other inmates to show what would happen to them if they got out of line

9. My only law library access is what other inmates would tell me

18

10. I have been denied food on several occasions between 7-5-22 and 7-7-22 I was denied food for 2 days I had been smearing feces on the walls and the staff thought if I didn't eat I couldn't deficate

11. In June of 2023 security searched my cell looking for razors but they never called for psyche services I think they are trying to get me to hurt myself

12. On October 7, 2022 I cut my wrist and asked to go to suicide watch Maj Frank Heroux denied my suicide watch request and order me placed back in the cell I came out of but he ordered me to be without clothes without a mattress or bed covering within 20 minutes of being back in that cell I cut my penis off now I wear diapers 24/7

13. I think cutting my penis off was a direct result of a of the decades of being locked down and the abuse by prison officials

14. In April 2023 I was placed in a punitive segregation cell where I remain to this day    I was not written up for anything    There is no justification for it I filed a grievance and it was deemed inappropriate    The grievance process is a joke

15. On 7-21-22 I was placed in 6 point restraints for no legitimate reason

16. Around 2019 I called the internal affair hotline and informed them of about 10 inmates who get high and should be drug screened

17. A couple of days later Sgt. McClure come to this unit and told inmate Terry King what I did    This created a lot of hostility between me and the other inmates

18. About 5 weeks ago I wrote a the Unit Manager about inmates making noise at night time    The unit manager shows this letter to inmates and it created some animosity between me and other inmates

19. In the last 7 years I have been more despondant and suicidal than I have ever been and I think it is a direct result of the years of cruel and unusual punishment this death sentence is

20. This abuse is an atypical and significant deprivation    I have to wear diaper all the time    I am lonely and suicidal

19

# VI. PROBLEM WITH DEATH ROW PROGRAM

1. By their policies and practices described herein, Defendant's have deprived and continue to deprive Mr. Hodge of the minimal civilized measure of life's necessities, and have violated his basic human dignity and his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution for each of the reasons set forth.

2. First, a cumulative effect of severe extended solitary confinement, along with the deprivation of good medical & mental health care, and other harsh conditions of Mr. Hodge's isolation amount to a serious deprivation of at least one basic human needs, including but not limited to common contact, positions & sensory loss, mental & physical health, physical exercise, sleep, nutrition, & meaningful activity. Plaintiff incorporates by reference each and every allegation contained in all the preceding factual paragraphs as set forth herein.

3. Second, prolong exposure to denial of basic needs is currently causing severe mental pain & permanent psychological & physical harm on Mr. Hodge.

4. In addition to his current psychological and physical pain, the likelihood Hodge will remain in solitary confinement for the foreseeable future subjects him to significant risk of future incapacity & permanent mental illness & physical harm. **See EXHIBIT 2 (Prison Legal News, July 2023, Pages 18 & 20).**

5. Third, Defendants' actions, individually and collectively, ensuring Mr. Hodge's stays isolation are not rightfully related to security or other penological needs of isolating an alleged dangerous prisoner, but rather are an arbitrary exercise of power, from a denial of a fair & reasonable process.

6. Finally, Defendant's enduring confinement of Mr. Hodge for 29 straight years under debilitating and extreme conditions strips him of his basic dignity and humanity in violation of contemporary standards of human decency and constitutes cruel and unusual treatment prohibited by the 8th and 14th Amendments. **See EXHIBIT 3, Grievance 23-0225/00360311 (Rehab program).**

7. The policies and practices complained of herein have been and continue to be implemented by the Defendants without formal promulgation procedures

performed by their agents, officials, employees, and all persons acting in concert with them are acting under color of state law, outside the scope of their official duties, and are being sued in their individual and official capacities.

8. Defendants have been aware of the deprivations complained herein, and condoned or been deliberately indifferent to such conduct. Governor Bill Lee's agents illegally bargain under 22 U.S.C. § 454, & 10 U.S.C. § 7594; misusing his police power. Tennessee Governor Bill Lee, abused the power of his office, in violation of Tn. Const, Art. 1, § 25 (violating 9th Amend. in criminal cases). He is being sued under official capacity only, as Respondent Superior. The Governor knowingly condoned these acts to occur under his power & control.

9. It is obvious to Defendants and to any reasonable person that conditions imposed on him for years cause mental anguish, suffering, & pain. Moreover, staff is aware via administrative channels & written or oral complaints when Mr. Hodge's was harmed. Defendants are indifferent to urgent mental health needs. I give up! **See EXHIBIT 4 05/12/22: Notice-Motion-Set Execution Date.**

## COUNT III: FOURTEENTH AMENDMENT

10. Plaintiff incorporates by reference each and every allegation contained in the preceding factual paragraphs set forth herein, to state a cause of action.

11. Defendant's have deprived Mr. Hodge of a liberty interest without due process of law by denying him meaningful and timely periodic review of his continued long-term and definite commitment to solitary confinement, by denying him meaningful notice of what he can do to free himself of these extreme restrictions and by denying him rights to appeal the Warden's arbitrary decision, in violation of the 14th Amendment to the United States Constitution.

12. The conditions and the duration of Defendants' confinement of Mr. Hodge constitute an atypical and significant hardship as compared with the ordinary incidents of prison life on death row for (3) basic reasons: (a) the exceedingly harsh and isolated conditions of solitary confinement; (b) the lengthy duration of solitary confinement; and (c) cumulative adverse physical and psychological effects from confinement. **See EXHIBIT 5 (Order 8/2/23; RE: Pro se motion)**

21

13. Mr. Hodge has been held in the extreme conditions described above for 29 years. Upon information and belief, this extended commitment to solitary confinement is atypical in comparison to the ordinary disciplinary and administrative segregation imposed in Tennessee on death row or otherwise.

14. Because indefinite commitment to solitary confinement constitutes a significant and atypical hardship, Mr. Hodge is entitled to meaningful notice of how he can alter his condition and gain adequate relief, as well as meaningful and timely periodic reviews and appeals (with aid of counsel) to determine whether his situation truly warrants the sentence he has done in isolation.

15. Defendants have denied and continue to deny any such notice or meaningful review by: (1) failing to provide Mr. Hodge with notice of what he can do to get relief from the conditions of his confinement: (2) making a predetermination Plaintiff will stay in solitary confinement until he dies; and (3) failing to provide meaningful appeals, rendering Level classification system and periodic reviews he receives substantively and procedurally meaningless.

16. Defendants also violate Mr. Hodge's due process rights by retaining him in conditions that amount to atypical and significant hardship without legitimate penological interest, as this detention occurs without reliable evidence or providing relief from the harsh conditions of solitary confinement will present a danger to the security to prisoners and/or the prison staff. See e.g. Colon v. Howard, 215 F.3d 227 (2d Cir. 2000) the court held that confinement of three hundred five-days under standard segregated housing conditions in the prison was a sufficient departure from the ordinary incidents of prison life to constitute an atypical and significant hardship as a matter of law.) Willis v. TDOC, 2002 WL 1189730 * 9 n. 7 (Tn.App. 2002)

## VI. **PRAYER FOR RELIEF**

17. Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this complaint. Mr. Hodge has suffered and will continue to suffer irreparable injury as a result of unlawful acts, omissions, policies, and practices of defendants, as alleged herein, unless he is granted the relief he requests. Friedman, 573 F.Supp.3d @ 1230-31 n.7 (Tn. 2021) The need for relief is critical because the rights at issue are paramount under the U.S. Constitution.

22

b. Issue injunctive relief ordering Defendants to present a real plan to the Court within 30 days of the issuance of the Court's order providing remedy for:

i. alleviation of the conditions of Plaintiff's confinement so that, for example, Plaintiff is allowed contact visitation, and purchase of food from vending machines at the prison; and no longer sentenced or punished in isolation; nor sensory deprivation, or environmental deprivation, and lack social and physical human contact.

ii. meaningful review and right to appeal decision regarding continued need for Plaintiff's solitary confinement within 45 days of the date of Court's order;

iii. meaningful review of Plaintiff's confinement level in the future; and

iv. adequate medical care and food to the Plaintiff and provide relief from chronic pain, treatment of his health care issues and the provision of adequate mental health treatment; and just compensation, for his pain and suffering.

c. Exercise the Court's discretion to provide funds, either through the funds available to this court or through combination with the Federal Public Defender's Office for the Middle District of Tennessee, so that Mr. Hodge can engage appropriate experts, including a psychiatrist and physician;

d. Award Plaintiff compensatory & punitive damages as fixed at trial;

e. Award the costs of this suit and reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, and other applicable law;

f. Retain jurisdiction of case until Defendants comply with the orders; and

g. Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

Henry Hodge # 102143    8-27-23
R.M.S.I. U-2-A-101
7475 Cockrill Bend Blvd.
Nashville, Tenn. 37209

I Henry Hodge hereby swear under the penalty of perjury, that the forgoing information is true and correct and based upon personal knowledge of the facts stated herein. 28 U.S.C. § 1746.

23

## CERTIFICATE OF SERVICE

I _N. Cammy Hall_ hereby certify I mailed a true & exact copy of the foregoing Civil Rights Complaint, (42 USC § 1983: 42 USC § 1997) to: Office of the Clerk, U.S. District Court 801 Broadway, U.S. Courthouse, Nashville, Tn. 37203, via prepaid U.S. mail on this the ___2___ day of August 2023.

24

# Eminant Danger Petition

RECEIVED
SEP 07 2023
U.S. District Court
Middle District TN

EXHIBIT 1

Comes the plaintiff to ask this court to waive my filing fees due to the eminant danger posed to me

ON 7-7-22 I cut my wrist and ask to go to suicide watch and Karen Millenor (psyche doctor) she turned my mental health treatment over to a prison guard (Major Frank Heroux) and he orde me back to the cell where I had cut my wrist within 20 minutes of me being back in my cell I cut my penis of

I am not the most mentally stable inmate at this prison I think of suicide on a daily basis and there are days wh I am focused on nothing but suicide but I wont get appropriate mental health care (see above paragraph)

After cutting my penis off I went to Vanderbilt Hospita for 2 weeks and had my penis reattached but it didnt take and I lost it around 7-21-22 I came back to RMSI and was immediately placed in 6point restraints in a suicide watch cell on the orders of Kent Colburn (Doctor) He never spoke to me He didnt know I was wheelchair bound He didnt know the last two days in the hospital I passed out twice trying to walk and I had to have blood transfusions I was not a threat to myself or anyone and there was no justification for the 6 poin restraint its just an example of the mental health care at this prison

Around June 26 2023 Unit Manager Dennis Davis come to my and he ask how I was doing and I said not good He ask if I was going to hurt myself I told him its none of you business 3 hours later security came and searched my cell for razors He believed I might cut on myself but He never called psyche service I filed a grievance about this and Jennifer Davis responded and claimed I was suicidal I have never met Jennifer Davis She doesnt have any knowledge of my mental health

55

I have thoughts of eating razor blades or using a razor blade to cut my throat or hang myself or set my cell on fire (smoke inhalation) whatever I do I will be denied appropriate mental health treatment one of the claims I want to bring is against Centurion for medical malpractice if it wasnt for their malpractice I would still have a penis

These people will let me kill myself and then pretend they didnt see it coming

I need this civil suit if for no other reason than to focus on something other than suicide

I do have several civil suits dismissed as frivolous but they were not malicious they were due to my youth and ignorance of the law those cases were around 1997 and 1998 I also won a case 5 guards were found liable for excessive force

Waiving my filing fees would give me some hope that I can get some relief in some way other than suicide I would appreciate any thing you can do for me

Respectfully

Henry Hodges

# CLAIM 1
## Due Process
## Violation

1 THERE ARE ONLY 44 DEATH ROW INMATES BUT THE DEATH ROW UNIT HAS 4 PODS WITH ALMOST 100 CELLS

2 ON 4-3-23 THE PRISON ADMINISTRATION DECIDED TO PUT ALL THE DEATH ROW INMATES IN 2 PODS

3 ON 4-3-23 I WAS IN D-POD CELL 102 A NON-PUNITIVE SEGREGATION CELL I WAS MOVED TO A-POD CELL-108 WHICH IS A PUNITIVE SEGREGATION CELL WITH NO DISCIPLINARY REPORT NO WAY TO APPE

4 I FILED A GRIEVANCE ABOUT IT AND IT WAS DEEMED INAPPROPRIATE UNIT 2 MANGER DAVIS RESPONDED TO MY GRIEVANCE

5 UM-2 DAVIS DOESNT DENY I WAS PUT IN A PUNITIVE SEGREGATION CELL ALTHOUGH HE DESCRIBES IT AS A "HIGH SECURITY MID-LEVEL SERVICE FLAP

6 THESE ARE 2 REASONS UM-2 DAVIS USES TO JUSTIFY PUTTING ME IN THIS CELL (1) "IN THE FREE WORLD YOU HAVE HAD A VERY VIOLENT HISTORY" FIRST OF ALL UM-2 DAVIS DOESNT KNOW WHAT I DID ON THE STREETS SECONDS I HAVENT BEEN ON THE STREET IN 33 YEARS BUT HE PUT ME ON PUNITIVE SEGREGATION FOR IT ???

7 (2) UM-2 DAVIS STATES I "HAVE SERIOUSLY INJURED OTHER INMATES WITH WEAPONS" IN 1994 ALMOST 3 DECADES AGO I CUT ONE INMATE

8 UM-2 DAVIS HAS VIOLATED MY DUE PROCESS RIGHT HE PUT ME IN A PUNITIVE SEGREGATE CELL WITHOUT JUSTIFICATION OR A DISCIPLINARY REPORT OR ANY WAY TO APPEAL IT

9 BEING PLACED IN THIS CELL HAS CAUSED ME MENTAL INSTABILITY I WAS IN ONE OF THESE CELLS FOR 12 STRAIGHT YEAR NEEDLESS TO SAY I HAVE AN AVERSON TO THESE CELLS

10 UM-2 DAVIS ALSO MOVED THE INMATES ON BOTH SIDES OF ME IN AN ATTEMPT TO ISOLATE ME THE LAST TIMES THEY PUT ME IN ONE OF THESE CELLS WAS 7-7-23 AND I CUT MY PENIS OFF

11 THE DEATH ROW UNIT IS SEPERATE FROM THE REST OF THE PRISON IT HAS ITS OWN PUNITIVE SEGREGATION CELLS RIGHT NOW THERE ARE 4 ACTIVE CELLS BUT ONLY 2 ARE IN USE

12 I AM SOLITARY CONFINEMENT WITHOUT JUSTIFICATION I WAS

58

13. I AM ON ADMINISTRATIVE SEGREGATION IN A PUNITIVE SEGREGATED CELL I HAVE NOT GOTTEN A DISCIPLINARY REPORT SO I CANT APPEAL THIS I FILED A GRIEVANCE BUT IT WAS DEEMED INAPPROPRIATE THE STAFF MOVED THE INMATES ON BOTH SIDES OF ME IN WHAT SEEMS LIKE AN ATTEMPT TO ISOLATE ME THIS WHOLE SITUATION HAS CAUSED ME MENTAL INSTABILITY AND TO BECOME SUICIDAL

14. AS LONG AS I AM IN PUNITIVE SEGREGATION I CANNOT PARTICIPATE IN THE DEATH ROW LEVEL PROGRAM WITH ALL THE OTHER INMATES

15. WHEN PRISON STAFF FAILED TO WRITE ME UP I NOT ALLOWED A DISCIPLINARY HEARING TO ARGUE THE CHARGE AND I CANT APPEAL A D-BOARD HEARING I DIDNT HAVE I AM STUCK AND THIS COURT IS MY ONLY HOPE FOR RELIEF

16. EX WARDEN TONY MAYES SIGNED OFF ON THE GRIEVANCE I FILED BUT HE DID NOTHING BUT JUSTIFY ME BEING ON PUNITIVE SEGREGATION HE HAD A RESPONSIBILITY TO CORRECT THE SITUATION BUT DIDNT

17. KEVIN GENOVESE IS DEPUTY ASSISTANT COMMISSIONER OF PRISON OPERATIONS HE SIGNED OFF ON MY GRIEVANCE HE HAD A RESPONSIBILITY TO CORRECT THE SITUATION BUT DIDNT

18. TODAY IS 8-4-23 AND I HAVE BEEN ON PUNITIVE SEGREGATION SINCE 4-4-23 (4 MONTHS) NO DISCIPLINARY REPORT NO APPEALS. I SEEM TO BE ON INDEFINITE PUNITIVE SEGREGATION AND ISOLATION AND OUT OF THE LEVEL PROGRAM FOR NO JUSTIFIABLE REASON

19. PRISON POLICY USED TO STATE YOU COULD ONLY BE PUT IN PUNITIVE SEGREGATION CELL IF YOU HAVE OR WAS BEING VIOLENT AND I DONT THINK THE POLICY HAS CHANGED I HAVE NOT BEEN VIOLENT

# CLAIM 2

### Medical Malpractice

1. RMSI PRISON CLINIC HAS 4 SUICIDE CELLS EACH. CELL HAS A CAMERA SO THE OCCUPANT CAN BE WATCHED 24/7 THESE CELLS ARE IN THE CLINIC SO IF THE OCCUPANT HURTS HIMSELF THE MEDICA STAFF IS RIGHT THERE THESE 4 CELLS ARE THE MOST SECURE AT THIS PRISON

2. ON 7-7-22 I CUT MU WRIST AND NEEDED STITCHES I WAS TAKEN TO THE CLINIC WHERE I REFUSED TREATMENT I TOLD KAREN MILLENOR (PSYCHE SERVICE) THAT I WANTED TO GO TO SUICIDE WATCH

3. KAREN MILLENOR TURNED MY MENTAL HEALTH TREATMENT OVER TO A PRISON GUARD (MAJOR FRANK HEROUX) HE ORDER ME PLACED BACK IN THE CELL I HAD COME OUT OF

4. THIS CELL HAD A BUSTED WINDOW AND MAJ FRANK HEROUX KNEW THERE MAY BE MORE RAZORS IN IT BECAUSE HE SEARCHED IT FOR RAZORS

5. I WAS PLACED IN THIS CELL BUTT NAKED AND WITHIN 20 MINUTES I HAD CUT MY PENIS OFF MAJ FRANK HEROUX HAS NO EXPERIENCE OR TRAINING IN MENTAL HEALTH TREATMENT

6. IF KAREN MILLENOR HAD PUT ME IN A SUICIDE WATCH CELL I I WOULD STILL HAVE MY PENIS HER FAILURE COSTITUTES MEDICAL MALPRACTICE CENTURIONS FAILURE TO PROVIDE EXPERIENCE AND TRAINED MEDICAL STAFF CONSTITUTES MEDICAL MALPRACTICE

7. I WAS TAKEN TO VANDERBILT HOSPITAL AND HAD MY PENIS REATTACHED I STAYED THERE 2 WEEKS AND NECROSIS SET IN AND I WAS TOLD I WOULD LOSE MY PENIS

8. ON 7-21-22 I WAS RETURNED TO RMSI AND WAS IMEDDIATELY TAKEN TO A SUICIDE WATCH CELL AND PLACED IN 6 POINT RESTRAINTS AND I REMAINED IN THESE RESTRAINTS BETWEEN 7 AND 14 DAYS

9. THE CRITERIA FOR BEING STRAPPED DOWN IS YOU HAVE TO BE A THREAT TO YOURSELF OR SOMEONE ELSE

10. KENT COLBURN IS THE MAN WHO ORDERED ME STRAPPED DOWN BUT I HAVE NEVER MET MR COLBURN HE COULDNT HAVE KNOWN IF I WAS A THREAT TO MYSELF OR SOMEONE ELSE NO ONE EVEN TALKED TO ME I WAS JUST STRAPPED DOWN

11 IF SOMEONE HAD SPOKEN TO ME THEY WOULD HAVE LEARNED THAT THE LAST 2 DAYS I WAS IN THE HOSPITAL TRIED TRIED TO WALK AND PASSED OUT AND HAD TO HAVE A BLOOD TRANSFUSION BOTH TIMES

12 IF SOMEONE HAD ASK THEY WOULD HAVE LEARNED I WAS IN NO CONDITION TO BE A THREAT TO MYSELF KENT COLBURNS OR DERING ME STRAPPED DOWN WITHOUT EVER TALKING TO ME IS AN ACT OF MEDICAL MALPRACTICE. AND CENTURIONS FAILURE TO PROVIDE EXPERIENCED AND TRAINED MEDICAL STAFF IS MEDICAL MALPRACTICE

# CLAIM 3

### Death
### Penalty
### IS
### Cruel
### AND
### Unusual
### Punishment

1  I WAS SENTENCE TO DIE IN JANUARY 1992 (31½ YEARS) THE U.S SUPREME UPHELD MY CONVICTION IN 2015 (8 YEARS) SINCE MY CONVICTION WAS UPHELD THE TENNESSEE SUPREME COURT HAS NOT SET ME ONE EXECUTION DATE

2  MY CONVICTION WAS UPHELD IN 2015 AND SINCE THEN I HAVE I HAVE MOTIONED THE TN SUPREME COURT 5 TIMES TO SET ME AN EXECUTION DATE AND WOULD ACCEPT THE ELECTRIC CHAIR AS THE METHOD

3  I HAVE BEEN IN LIMBO FOR 8 YEARS WAITING FOR AN EXECUTION DATE HOW MUCH LONGER WILL I BE IN LIMBO WAITING FOR A DATE THIS IS CRUEL AND UNUSUAL PUNISHMENT BECAUSE I AM WILLING TO ACCEPT THE ELECTRIC CHAIR THE STATE COULD CARRY OUT MY SENTENCE TOMORROW BUT INSTEAD THEY KEEP ME IN LIMBO

4  DEATH ROW HAS A LEVEL SYSTEM TO GIVE INMATE MORE FREEDOM FOR GOOD BEHAVIOUR OF THE 31½ YEARS I HAVE BEEN HERE I HAD A LEVEL FOR 2 YEARS AND THE OTHER 29½ YEARS I WAS LOCKED DOWN

5  IN SEPT OF 1996 I WAS SENT TO BRUSHY MOUNTAIN PRISON UPON ARRIVAL I WAS SEVERELY BEATEN BY THE GUARDS I FILED A CIVIL SUIT AND 5 GUARDS WERE FOUND LIABLE FOR EXCESSIVE FORCE

6  IN 2001 OR 2002 I DROPPED MY APPEALS BECAUSE OF THE WAY I WAS BEING TREATED THE COURT HELD A HEARING AND THEN WARDEN RICKY BELL TESTIFIED MY ATTORNEY KELLY HENRY ASKED MR BELL IF HE WOULD GIVE ME A LEVEL AND HE SAID YES

7  A YEAR LATER THE UNIT STAFF OFFICERS MADAR AND PERRY RECOMMENDED ME FOR A LEVEL WARDEN BELL DENIED THE LEVEL AND MOVED MADAR AND PERRY OUT OF THE UNIT

8  SPENT 12 STRAIGHT YEARS IN A PUNITIVE SEGREGATION CELL BUT NOT FOR MY BEHAVIOUR I WAS USED TO BE AN EXAMPLE FOR THE OTHER INMATES TO SHOW WHAT WOULD HAPPEN TO THEM IF THEY GOT OUT OF LINE

9  MY ONLY LAW LIBRARY ACCESS IS WHAT OTHER INMATES WOULD TELL ME

10  I HAVE BEEN DENIED FOOD ON SEVERAL OCCASSIONS BETWEEN 7-5-22 AND 7-7-22 I WAS DENIED FOOD FOR 2 DAYS I HAD BEEN SMEARING FECES ON THE WALLS AND THE STAFF THOUGHT IF I DIDNT EAT I COULDNT DEFECATE

11  IN JUNE OF 2023 SECURITY SEARCHED MY CELL LOOKING FOR RAZORS BUT THEY NEVER CALLED FOR PSYCHE SERVICES I THINK THEY ARE TRYING TO GET ME TO HURT MYSELF

12 ON OCTOBER 7, 2022 I CUT MY WRIST AND ASK TO GO TO SUIC WATCH MAJ. FRANK HEROUX DENIED MY SUICIDE WATCH REQUEST AND ORDER ME PLACED BACK IN THE CELL I CAME OUT OF BUT HE ORDE ME TO BE WITHOUT CLOTHES WITHOUT A MATTRESS OR BED COVERING WITHIN 20 MINUTES OF BEING BACK IN THAT CELL I CUT MY PENIS OFF NOW I WEAR DIAPERS 24/7

13 I BELIEVE CUTTING MY PENIS OFF WAS A DIRECT RESULT OF A OF THE DECADES OF BEING LOCKED DOWN AND THE ABUSE BY PRISO OFFICIALS

14 IN APRIL 2023 I WAS PLACED IN A PUNITIVE SEGREGATION CEL WHERE I REMAIN TO THIS DAY I WAS NOT WRITTEN UP FOR ANY THING THERE IS NO JUSIFICATION FOR IT I FILED A GRIEVANCE AND IT WAS DEEMED INAPPROPRIATE THE GRIEVANCE PROCESS IS A JOKE

15 ON 7-21-22 I WAS PLACED IN 6 POINT RESTRAINTS FOR NO LEGITIMATE REASON

16 AROUND 2019 I CALLED THE INTERNAL AFFAIR HOTLINE AND INFORME THEM OF ABOUT 10 INMATES WHO GET HIGH AND SHOULD BE DRUG SCREENED

17 A COUPLE OF DAYS LATER SGT MCCLURE COME TO THIS UNIT AND TOLD INMATE TERRY KING WHAT I DID THIS CREATED A LOT OF HOSTILITY BETWEEN ME AND THE OTHER INMATES

18 ABOUT 5 WEEKS AGO I WROTE THE UNIT MANAGER ABOUT INMATES MAKING NOISE AT NIGHT TIME THE UNIT MANAGER SHOWS THI LETTER TO AN INMATE AND IT CREATED SOME ANAMOSITY BETWEEN ME AND OTHER INMATES

19 IN THE LAST 7 YEARS I HAVE BEEN MORE DESPONDANT AND SUICIDAL THAN I HAVE EVER BEEN AND I THINK IT IS A DIRECT RESULT OF THE YEARS OF CRUEL AND UNUSUAL PUNISHMENT THIS DEATH SENTENCE IS

20 THIS ABUSE WAS AN ATYPICAL AND SIGNIFICANT DEPRIVATION I HAVE TO WEAR DIAPER ALL THE TIME I AM LONELY AND SUICIDAL

# Declaration

ON 7-24-23 I TURNED IN A INMATE REQUEST FORM ASKING FOR A CERTIFIED 6 MONTH COPY OF MY TRUST FUND ACCOUNT AND AS OF THIS DATE I HAVE GOTTEN NO RESPONSE FROM MY REQUEST

I SWEAR UNDER PENALTY OF PERJURY THE ABOVE STATEMENT IS TRUE AND CORRECT ON THIS DAY OF AUGUST 2023

unit manager Tess Korth, reported his behavior to then-warden Ray Garcia, she also noted that Smith would sit in the dark eating bananas while watching women undress. "He was disgusting," she said.

However, Garcia was also eventually convicted in the sex abuse scandal, so it's not surprising that Korth said she was forced out after making her report.

Garcia, 55, was convicted in late 2022 and sentenced on March 22, 2023. That was soon after former guard and kitchen supervisor Enrique Chavez, 49, got a 20-month term on February 9, 2023. It was also just months after former chaplain James Theodore Highhouse, 49, began a seven-year federal prison term on November 2, 2022. [See: *PLN*, June 2023, p.60.]

Handing Garcia nearly six years in federal prison, Judge Yvonne Gonzalez Rogers told the disgraced warden: "You entered a cesspool and then did nothing about it. You just went along with the ride and enjoyed the cesspool yourself."

Still awaiting sentencing later in June 2023 was former guard and technician Ross Klinger, 38. He pleaded guilty on February 10, 2022, to coercing three prisoners to have sex with him in 2020 with gifts, money and offers to marry them and father their children. He even stalked one woman after he was transferred to another prison, using an email alias—"Juan Garcia"—to manipulate her with details gleaned from accessing her prison records without authorization. [See: *PLN*, May 2022, p.28.]

Klinger cooperated in prosecuting the other staffers convicted in the scandal at FCI-Dublin, which now has the dubious distinction of having the most guards charged with sex crimes of any prison in the country.

Additional sources: *AP News, Davis Vanguard, Dublin Independent, KTVU, Los Angeles Times, Pleasanton Weekly*

# Tennessee DOC Coughs Up Video of Condemned Prisoner Who Severed Own Penis

*by Eike Blohm, MD*

After a month of foot-dragging, the Tennessee Department of Corrections (DOC) complied with a court order on February 24, 2023, releasing surveillance video of a death-row prisoner who cut off his own penis and was then left strapped to a foam mattress in his cell.

Henry Hodges, 56, pleaded guilty in 1990 to murdering a man in Nashville who allegedly accepted Hodges' proposition for paid sex. With testimony at his sentencing from his 15-year-old girlfriend, who participated in the killing, Hodges was condemned.

Over the next three decades, DOC documented his extensive history of mental illness with recurrent psychotic episodes – including one in early October 2022, when Hodges began smearing feces on his cell walls at Riverbend Maximum Security Institution (RMSI). Instead of treating his psychosis, staff simply withheld food. Four days later he slit his wrists. He begged medical staff to place him on suicide watch, but he was ban-

daged and returned to his cell instead.

In the midst of his decompensated psychosis, Hodges then used a piece of broken window glass and razor blades he'd secreted in his cell to cut off his penis. After surgery to reattach it, he was kept naked in his cell atop a thin foam mattress on a concrete slab, restrained by his wrists and ankles and left covered in his own feces.

His attorney, Federal Public Defender Kelley Henry, filed an emergency motion for a temporary restraining order against prison officials. Henry argued that Hodges' prolonged immobility would lead to pressure sores; that fecal matter on the fresh surgical wound predispose it to infection; and that the absence of mental stimuli would exacerbate his psychosis. Prison staff wouldn't even remove Hodges' restraints long enough for him to sign his complaint.

On October 28, 2022, the Davidson County Chancery Court ruled that the Eighth Amendment guarantee of protection from cruel and unusual punishment entitled Hodges to the recognized standard of care for his medical conditions. A restraining order was issued to prevent the prison from keeping him in soiled clothing, nor could he remain restrained continuously in the same position while his pressure ulcers healed.

The court noted that the medical standard of care is to rotate an immobile patient every two hours to a new position. It furthermore ordered that Hodges receive adequate wound care, mental stimuli, periods of reduced lighting to facilitate sleep and access to medication for his psychosis. DOC argued that the court shouldn't second-guess prison doctors, but Chancellor I'Ashea L. Myles was sufficiently horrified



FREE E-BOOK "ANGELS IN THE MIRROR"
PunishPerjury.org/Angels.pdf

• FIGHT COERCED TESTIMONY
• JAILHOUSE WITNESSES
• POLICE AND FELON PERJURY

A legal and philosophical foundation for arguing how perjury violates legal traditions and due process through inadequate jury instructions and a lack of regulation of perjury which violates the balance of power and the fact-finding function of courts.

ANGELS IN THE MIRROR

Essays on Marxism in Criminal Justice

by

Stephen Lynch Murray

Second Edition

web address - PunishPerjury.org/Angels.pdf
Perjury undermines our founding principles
and violates the Constitutional design

EXHIBIT 2

Case 3:23-cv-00952    Document 1    Filed 09/07/23    Page 69 of 83 PageID #: 69

67

by Hodges' treatment that she ordered an evaluation by an independent physician.

At once DOC moved to seal Hodges' medical records and cell surveillance video – a motion Kelly fought on his behalf. The *Associated Press* and *Nashville Banner* filed motions to intervene, arguing the public had a right to see what so upset the court. Myles agreed with them on January 12, 2023, refusing the motion to seal and ordering release of the videos, with redactions to protect RMSI security. *See: Hodges v. Helton*, Tenn. Ch. (20th Jud. Dist., Davidson Cty.), Case No. 22-1440.

So what do the videos show? As *WTVF* in Nashville reported, they show "a man strapped to a piece of foam on a concrete slab for days in four-point and sometimes six-point restraints that often turned Hodges' arm purple" as he "recover[ed] from surgery in an environment that often induce[d] psychotic outbursts and screams." Necrosis also cost Hodges all use of his penis.

In January 2023, Gov. Bill Lee (R) suspended executions in the state and fired a pair of top DOC officials over botched execution drug protocols. [See: *PLN*, June 2023, p.30.] A bill to publicly disclose pharmacies compounding the drugs and another to add firing squads to the list of approved execution methods both died in the legislative session that ended in April 2023. But HB 1002 passed, allowing state Attorney General Jonathan Skrmetti (R) to take over post-conviction proceedings in capital cases, presumably from local district attorneys he might find too squeamish about killing prisoners. ◼

Additional sources: *Nashville Tennessean, WTVF*

# California LGBTQ Pardon Initiative Falls Short

### by Chuck Sharman

THREE YEARS AFTER Gov. Gavin Newsom (D) unveiled a plan to pardon LGBTQ Californians prosecuted for their sexual orientation, the program has exactly one living beneficiary: Henry Pachnowski, 83, whose 1967 lewd conduct conviction was pardoned in 2022.

"While this initiative may appear to rectify historical wrongs, it has little, if any, impact on the actual lives of those subjected to discriminatory laws," declared Jennifer Orthwein, an attorney representing LGBTQ clients who is also a forensic psychologist in state prisons.

Launched in February 2020, the initiative was focused on pardoning vagrancy, loitering and sodomy charges historically used to target LGBTQ individuals. Pachnowski, a Holocaust survivor, was caught engaging in consensual sex with another man outside an Orange County warehouse.

He said he was "thrilled that this finally happened."

"I thought I was going to die with that burden," he added, "It almost feels like now I'm whole."

The first pardon under the program was granted posthumously to civil rights activist Bayard Rustin, who died in 1987. Convicted of vagrancy in 1953 for engaging in consensual sexual activity with another man, he was also posthumously awarded the Presidential Medal of Freedom in 2013 by former Pres. Barack Obama (D).

State Sen. Scott Wiener (D), who played a key role in securing Rustin's pardon, lauded the initiative and speculates low uptake may be due to shame and lack of awareness among LGBTQ elders. The pool of pardon candidates skews older, since California repealed its law criminalizing consensual gay sex in 1975. A process established in 1997 allows those charged for consensual adult sexual conduct to seek removal from the sex offender registry, too.

But the underlying convictions persist on records until there is a pardon, which also restores civic rights, like owning a firearm or serving on a jury. In California, pardons have also helped people avoid deportation and expanded housing and employment opportunities previously limited by past convictions.

"We were very thankful and very happy with the initiative when it launched," recalled Jorge Reyes Salinas, spokesperson for LGBTQ advocacy group Equality California.

However, the governor's office has not tracked program applications. Izzy Gardon, a spokesperson for Newsom, said that people often pursue alternatives to pardons, such as dismissals and certificates of rehabilitation issued by judges.

That's because pardons are rare, highly publicized and time-consuming, explained Josh Kim, an attorney at Root & Rebound, which provides legal support to those affected by mass incarceration. Expungement, by contrast, simply updates records to reflect dismissals without erasing the charges. As a result, Kim generally does not recommend applying for pardons, and relying on them as a form of policy is misguided, he believes. However, he acknowledges that his clients may still desire pardons for their symbolic relief.

Added Colby Lenz, an activist with the California Coalition for Women Prisoners and an advisor to Newsom's staff during the program's creation, "We are looking for a way to take this symbolic recognition and make it real."

In his pardon application, Pachnowski said clemency would not only acknowledge


Artist behind the walls?
Inspired by prison art?
Roll with the big dogs!
Check out *Ink from the Pen!*

1440 Beaumont Ave. · Ste. A2-266 · Beaumont, CA 92223
760.616.0567 | www.InkFromThePen.com |
*Magazines are allowed in most State and Federal Prisons*

Case 3:23-cv-00952    Document 1    Filed 09/07/23    Page 70 of 83 PageID #: 70

by Hodges' treatment that she ordered an evaluation by an independent physician.

At once DOC moved to seal Hodges' medical records and cell surveillance video – a motion Kelly fought on his behalf. The *Associated Press* and *Nashville Banner* filed motions to intervene, arguing the public had a right to see what so upset the court. Myles agreed with them on January 12, 2023, refusing the motion to seal and ordering release of the videos, with redactions to protect RMSI security. *See: Hodges v. Helton,* Tenn. Ch. (20th Jud. Dist., Davidson Cty.), Case No. 22-1440.

So what do the videos show? As *WTVF* in Nashville reported, they show "a man strapped to a piece of foam on a concrete slab for days in four-point and sometimes six-point restraints that often turned Hodges' arm purple" as he "recover[ed] from surgery in an environment that often induce[d] psychotic outbursts and screams." Necrosis also cost Hodges all use of his penis.

In January 2023, Gov. Bill Lee (R) suspended executions in the state and fired a pair of top DOC officials over botched execution drug protocols. [See: *PLN,* June 2023, p.30.] A bill to publicly disclose pharmacies compounding the drugs and another to add firing squads to the list of approved execution methods both died in the legislative session that ended in April 2023. But HB 1002 passed, allowing state Attorney General Jonathan Skrmetti (R) to take over post-conviction proceedings in capital cases, presumably from local district attorneys he might find too squeamish about killing prisoners. ◼

Additional sources: *Nashville Tennessean, WTVF*

# California LGBTQ Pardon Initiative Falls Short

## by Chuck Sharman

THREE YEARS AFTER GOV. GAVIN NEWsom (D) unveiled a plan to pardon LGBTQ Californians prosecuted for their sexual orientation, the program has exactly one living beneficiary: Henry Pachnowski, 83, whose 1967 lewd conduct conviction was pardoned in 2022.

"While this initiative may appear to rectify historical wrongs, it has little, if any, impact on the actual lives of those subjected to discriminatory laws," declared Jennifer Orthwein, an attorney representing LGBTQ clients who is also a forensic psychologist in state prisons.

Launched in February 2020, the initiative was focused on pardoning vagrancy, loitering and sodomy charges historically used to target LGBTQ individuals. Pachnowski, a Holocaust survivor, was caught engaging in consensual sex with another man outside an Orange County warehouse.

He said he was "thrilled that this finally happened."

"I thought I was going to die with that burden," he added, "It almost feels like now I'm whole."

The first pardon under the program was granted posthumously to civil rights activist Bayard Rustin, who died in 1987. Convicted of vagrancy in 1953 for engaging in consensual sexual activity with another man, he was also posthumously awarded the Presidential Medal of Freedom in 2013 by former Pres. Barack Obama (D).

State Sen. Scott Wiener (D), who played a key role in securing Rustin's pardon, lauded the initiative and speculates low uptake may be due to shame and lack of awareness among LGBTQ elders. The pool of pardon candidates skews older, since California repealed its law criminalizing consensual gay sex in 1975. A process established in 1997 allows those charged for consensual adult sexual conduct to seek removal from the sex offender registry, too.

But the underlying convictions persist on records until there is a pardon, which also restores civic rights, like owning a firearm or serving on a jury. In California, pardons have also helped people avoid deportation and expanded housing and employment opportunities previously limited by past convictions.

"We were very thankful and very happy with the initiative when it launched," recalled Jorge Reyes Salinas, spokesperson for LGBTQ advocacy group Equality California.

However, the governor's office has not tracked program applications. Izzy Gardon, a spokesperson for Newsom, said that people often pursue alternatives to pardons, such as dismissals and certificates of rehabilitation issued by judges.

That's because pardons are rare, highly publicized and time-consuming, explained Josh Kim, an attorney at Root & Rebound, which provides legal support to those affected by mass incarceration. Expungement, by contrast, simply updates records to reflect dismissals without erasing the charges. As a result, Kim generally does not recommend applying for pardons, and relying on them as a form of policy is misguided, he believes. However, he acknowledges that his clients may still desire pardons for their symbolic relief.

Added Colby Lenz, an activist with the California Coalition for Women Prisoners and an advisor to Newsom's staff during the program's creation, "We are looking for a way to take this symbolic recognition and make it real."

In his pardon application, Pachnowski said clemency would not only acknowledge



Ink From The Pen

Artist behind the walls?
Inspired by prison art?
Roll with the big dogs!
Check out *Ink from the Pen*!

1440 Beaumont Ave. • Ste. A2-261 • Beaumont, CA 92223

760.610.0557 | www.InkFromThePen.com ◉ ◉
*Magazines are allowed in most State and Federal Prisons*

unit manager Tess Korth, reported his behavior to then-warden Ray Garcia, she also noted that Smith would sit in the dark eating bananas while watching women undress. "He was disgusting," she said.

However, Garcia was also eventually convicted in the sex abuse scandal, so it's not surprising that Korth said she was forced out after making her report.

Garcia, 55, was convicted in late 2022 and sentenced on March 22, 2023. That was soon after former guard and kitchen supervisor Enrique Chavez, 49, got a 20-month term on February 9, 2023. It was also just months after former chaplain James Theodore Highhouse, 49, began a seven-year federal prison term on November 2, 2022. [See: *PLN*, June 2023, p.60.]

Handing Garcia nearly six years in federal prison, Judge Yvonne Gonzalez Rogers told the disgraced warden: "You entered a cesspool and then did nothing about it. You just went along with the ride and enjoyed the cesspool yourself."

Still awaiting sentencing later in June 2023 was former guard and technician Ross Klinger, 38. He pleaded guilty on February 10, 2022, to coercing three prisoners to have sex with him in 2020 with gifts, money and offers to marry them and father their children. He even stalked one woman after he was transferred to another prison, using an email alias—"Juan Garcia"—to manipulate her with details gleaned from accessing her prison records without authorization. [See: *PLN*, May 2022, p.28.]

Klinger cooperated in prosecuting the other staffers convicted in the scandal at FCI-Dublin, which now has the dubious distinction of having the most guards charged with sex crimes of any prison in the country.

Additional sources: *AP News, Davis Vanguard, Dublin Independent, KTVU, Los Angeles Times, Pleasanton Weekly*

# Tennessee DOC Coughs Up Video of Condemned Prisoner Who Severed Own Penis

*by Eike Blohm, MD*

AFTER A MONTH OF FOOT-DRAGGING, the Tennessee Department of Corrections (DOC) complied with a court order on February 24, 2023, releasing surveillance video of a death-row prisoner who cut off his own penis and was then left strapped to a foam mattress in his cell.

Henry Hodges, 56, pleaded guilty in 1990 to murdering a man in Nashville who allegedly accepted Hodges' proposition for paid sex. With testimony at his sentencing from his 15-year-old girlfriend, who participated in the killing, Hodges was condemned.

Over the next three decades, DOC documented his extensive history of mental illness with recurrent psychotic episodes — including one in early October 2022, when Hodges began smearing feces on his cell walls at Riverbend Maximum Security Institution (RMSI). Instead of treating his psychosis, staff simply withheld food. Four days later he slit his wrists. He begged medical staff to place him on suicide watch, but he was ban-

daged and returned to his cell instead.

In the midst of his decompensated psychosis, Hodges then used a piece of broken window glass and razor blades he'd secreted in his cell to cut off his penis. After surgery to reattach it, he was kept naked in his cell atop a thin foam mattress on a concrete slab, restrained by his wrists and ankles and left covered in his own feces.

His attorney, Federal Public Defender Kelley Henry, filed an emergency motion for a temporary restraining order against prison officials. Henry argued that Hodges' prolonged immobility would lead to pressure sores; that fecal matter on the fresh surgical wound predispose it to infection; and that the absence of mental stimuli would exacerbate his psychosis. Prison staff wouldn't even remove Hodges' restraints long enough for him to sign his complaint.

On October 28, 2022, the Davidson County Chancery Court ruled that the Eighth Amendment guarantee of protection from cruel and unusual punishment entitled Hodges to the recognized standard of care for his medical conditions. A restraining order was issued to prevent the prison from keeping him in soiled clothing, nor could he remain restrained continuously in the same position while his pressure ulcers healed.

The court noted that the medical standard of care is to rotate an immobile patient every two hours to a new position. It furthermore ordered that Hodges receive adequate wound care, mental stimuli, periods of reduced lighting to facilitate sleep and access to medication for his psychosis. DOC argued that the court shouldn't second-guess prison doctors, but Chancellor I'Ashea L. Myles was sufficiently horrified



**FREE E-BOOK "ANGELS IN THE MIRROR"**
**PunishPerjury.org/Angels.pdf**

• FIGHT COERCED TESTIMONY
• JAILHOUSE WITNESSES
• POLICE AND FELON PERJURY

A legal and philosophical foundation for arguing how perjury violates legal traditions and due process through inadequate jury instructions and a lack of regulation of perjury which violates the balance of power and the fact-finding function of courts.

**ANGELS IN THE MIRROR**

Essays on Marxism in Criminal Justice

by

Stephen Lynch Murray

Second Edition

**web address: PunishPerjury.org/Angels.pdf**
Perjury undermines our founding principles and violates the Constitutional design

Case 3:23-cv-00952    Document 1    Filed 09/07/23    Page 72 of 83 PageID #: 72



EXHIBIT 3 Inp-501.01 V1.(I)(1)

## TENNESSEE DEPARTMENT OF CORRECTION
## INMATE GRIEVANCE


RECEIVED
JUN 23 2023
By Grievance

HENRY HODGES
NAME

102143
NUMBER

RMSI
INSTITUTION & UNIT

DESCRIPTION OF PROBLEM: ON 6-18-23 AT ABOUT 5:20 pm Sgt ROBERTS SERVED SUPPER AND I ASK HIM IF I COULD ATTEND THE MEN OF VALOR PROGRAM

REQUESTED SOLUTION: TO ALLOW B AND C LEVELS TO ATTEND THE PROGRAM THAT IS WHAT THE CAGES WERE BUILT FOR

Henry Hodges
Signature of Grievant

6-19-23
Date

==============================================

### TO BE COMPLETED BY GRIEVANCE CLERK

23-0225/00360311
Grievance Number

6/23/2023
Date Received

N. Twam.
Signature Of Grievance Clerk

INMATE GRIEVANCE COMMITTEE'S RESPONSE DUE DATE: _____

AUTHORIZED EXTENSION: _____
New Due Date

_____
Signature of Grievant

==============================================

06/30/23
### INMATE GRIEVANCE RESPONSE
Summary of Supervisor's Response/Evidence: See CR-3148

07/05/23
Chairperson's Response and Reason(s): Supervisor Response Acknowledged

DATE: 06/29/23    CHAIRPERSON: _____

Do you wish to appeal this response? ✓ YES ____ NO

THE GRIEVANCE HEARD ON 6-2- WAS MARKED 23-0209/003600

If yes: Sign, date, and return to chairman for processing within five (5) days of receipt of first-level response.

07/10/23    Henry Hodges
GRIEVANT

6-30-23
DATE

Jim Hall 7/1/23
WITNESS    7:53 AM

THIS GRIEVANCE AND U-MGR DAVIS REPLY SHOWS RMSI STAFF IS DELIBERATELY INDIFFERENT TO MY SPIRITUAL NEEDS MAKING GRIEVANCE REMEDY A DEAD END

Distribution Upon Final Resolution:

White - Inmate Grievant    Canary – Warden    Pink – Grievance Committee    Goldenrod – Commissioner (if applicable)



**TENNESSEE DEPARTMENT OF CORRECTION**

**INMATE GRIEVANCE** (continuation sheet)

DESCRIPTION OF PROBLEM: He said yes that He would take me when the men of valor people arrived but sgt Roberts Did not take me

This case law mandates B and C levels Be allowed to attend those programs and the reason the cages were built

Jon Hall vs Donald Trump 3:19-cv-00628



# TENNESSEE DEPARTMENT OF CORRECTION
## RESPONSE OF SUPERVISOR OF GRIEVED EMPLOYEE OR DEPARTMENT

DATE: 6/27/2023

Please respond to the attached grievance, indicating any action taken.

Date Due: 6/30/23

23-0025 10036031

**Grievance Number**

Hodges Henry

**Inmate Name**

102143

**Inmate Number**

Inmate Hodge

This grievance was addressed in front of a grieve committee on 6/27/23.

_Unit MAnager Davis_
SIGNATURE

06/27/2023
DATE

 **Department of**
**Correction**

**MEMO**

**To:**       Unit Manager Davis

**From:**    Cpl. S. Ward, RMSI Grievance Chairperson

**Date:**    June 8, 2023

**Subject:** **Supervisor's Response Requested (CR-3148)**

**Grievance:** 23-0209/00360055

**Grievant:**   Henry Hodges, #102143                    Unit/Location: 2A108

The inmate listed above has filed a grievance pertaining to your department or area of responsibility. As a result, I need you to complete form CR-3148 with a Supervisor Response that specifically addresses the grievant's concern. You may complete the form electronically and e-mail it to me or complete the enclosed form and mail it back to the Grievance Office.

It is our goal to resolve all grievances at the lowest level possible. I ask that, if possible, please attempt to resolve the complaint with the grievant. If you get the issue resolved, please complete the following steps:

»» Complete the CR-3148, Supervisor Response form. Allow the grievant to review your response.

»» At the bottom of the Inmate Grievance Form (CR-1394), have the grievant check the NO box next to the ' Do you wish to appeal this response?' question.

»» Make sure the grievant signs and dates the CR-1394.

»» You sign the Witness line and return all paperwork to the Grievance Office.

If you are unable to resolve the issue, please complete the enclosed Supervisor's Response (CR-3148) as requested in the instructions at the opening of this memo and return it to the Grievance Office by the listed date.

**Thank you for your help.**

Department of Correction * Riverbend Maximum Security Institution * 7475 Cockrill Bend
Blvd. * Nashville, TN 37243 * 615-350-3361 * tn.gov/Correction



# TENNESSEE DEPARTMENT OF CORRECTION
## INMATE GRIEVANCE



RECEIVED
JUN 0 8 2023
By Grievance Cp[?]

HENRY HODGES     102143          RMSI
NAME              NUMBER         INSTITUTION & UNIT

DESCRIPTION OF PROBLEM: ON 6-4-23 AT 5:20 pm SGT ROBERTS
SERVED SUPPER AND I ASK HIM IF I COULD
ATTEND THE MEN OF VALOR PROGRAM AND He

REQUESTED SOLUTION: TO ALLOW B AND C LEVELS TO
PARTICIPATE IN THE PROGRAMS

Henry Hodges                    6-5-23
Signature of Grievant           Date

========================================================

*TO BE COMPLETED BY GRIEVANCE CLERK*

23-0209/00360055     6/8/2023        Tuam N.
Grievance Number     Date Received   Signature Of Grievance Clerk

INMATE GRIEVANCE COMMITTEE'S RESPONSE DUE DATE: _____

AUTHORIZED EXTENSION: _____
                New Due Date                    Signature of Grievant

========================================================

06/15/23          **INMATE GRIEVANCE RESPONSE**
Summary of Supervisor's Response/Evidence: See CA-3148

06/20/23
Chairperson's Response and Reason(s): Supervisor Response Acknowledged

DATE: 06/12/23    CHAIRPERSON: [signature]

Do you wish to appeal this response?    ✓ YES    _____ NO

If yes:    Sign, date, and return to chairman for processing within five (5) days of receipt of first-level response.

6/25/23 Henry Hodges      6-13-23      Donald M[?]berts 129719
         GRIEVANT          DATE         WITNESS
                                        Jon Hell 6:32 PM 6/13/22

Distribution Upon Final Resolution:

White - Inmate Grievant   Canary – Warden   Pink – Grievance Committee   Goldenrod – Commissioner (if applicable)



**TENNESSEE DEPARTMENT OF CORRECTION**
**INMATE GRIEVANCE** (continuation sheet)

DESCRIPTION OF PROBLEM: SAID YES THAT HE WOULD TAKE ME WHEN THE MEN OF VALOR people ARRIVED

Rudy KAUS OF THE MEN OF VALOR pROGRAM ARRIVED AT ABOUT 5:40 pm Gut SGT ROBERTS DID NOT TAKE ME

THE REASON THE METAL CAGES WERE BUILT IN C-POD WAS SO BAND C LEVELS COULD PARTICIPATE IN THE pROGRAMS

THIS CASE LAW MANDATES IT

JON D. HALL V DONALD TRUMP 3:19-CV-00628

Case 3:23-cv-00952   Document 1   Filed 09/07/23   Page 78 of 83 PageID #: 78

74



# TENNESSEE DEPARTMENT OF CORRECTION
## RESPONSE OF SUPERVISOR OF GRIEVED EMPLOYEE OR DEPARTMENT

DATE: 6/8/2023

Please respond to the attached grievance, indicating any action taken.

Date Due: 6/15/2023

23-0209/00360055
**Grievance Number**

Hodges, Henry
**Inmate Name**

102143
**Inmate Number**

Mr. Hodges the day in question there was a severe lack of security staff.

We apologize for the inconvenience.

In the future, the supervisor in charge has been told to contact the shift command.

If that is to no avail, he has been told to contact the unit manager.

_Unit Manager Davis_
SIGNATURE

06/09/2023
DATE

# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE

## Henry Eugene Hodges vs. State of Tennessee

### Davidson County Criminal Court
### 90S1418

### No. M1999-00516-SC-R11-PD

**Date Printed:  05/12/2022**                    **Notice / Filed Date: 05/12/2022**

---

### NOTICE - Motion - Set Execution Date

**FILED:  Henry Hodges'** *PRO SE* **MOTION TO SET EXECUTION DATE**

The Appellate Court Clerk's Office has entered the above action.

James M. Hivner
Clerk of the Appellate Courts



Supreme Court – Middle Division
Appellate Court Clerk's Office - Nashville
100 Supreme Court Building
401 7th Avenue North
Nashville, TN 37219-1407
(615) 741-2681

Henry Eugene Hodges #102143
Riverbend Maximum Security Institution
7475 Cockrill Bend Blvd.
Nashville TN 37209-1048

Re: M1999-00516-SC-R11-PD - Henry Eugene Hodges vs. State of Tennessee

Notice: Motion - Set Execution Date

Attached to this cover letter, please find the referenced notice issued in the above case. If you have any questions, please feel free to call our office at the number provided.

cc:  Kelley Jane Henry
     Zachary Thomas Hinkle
     RIVERBEND MAXIMUM SECURITY INSTITUTION
     Tennessee Department of Corrections
     Henry Eugene Hodges
     GOVERNOR, STATE OF TENNESSEE

FILED
08/02/2023
Clerk of the
Appellate Courts

# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE

## STATE OF TENNESSEE v. HENRY EUGENE HODGES

**Criminal Court for Davidson County**
**No. 90S1418**

### No. M1999-00516-SC-R11-PD

### ORDER

On July 20, 2023, Henry Eugene Hodges, pro se, filed a motion seeking to end his appeals and to set an execution date. Mr. Hodges has filed numerous pro se motions to set an execution date beginning in 2021. In an earlier motion to set, the Court explained that the Federal Public Defender had entered an appearance as counsel of record, and therefore, Mr. Hodges could not simultaneously proceed pro se. In a subsequent pro se motion to set, Mr. Hodges suggested his legal representation had ended at the conclusion of the federal tier of his appeals process; however, the issue was not addressed further.

Mr. Hodges' series of pro se requests for an execution date followed the State's September 2019 motion to set Mr. Hodge's execution date. On December 30, 2019, the Federal Public Defender, who had been included in the certificate of service on the State's motion, filed a response opposing the State's motion and alleging Mr. Hodges is incompetent to be executed. Subsequently, all executions were postponed due to the COVID-19 pandemic. As executions were set to resume in April 2022, Governor Lee issued a reprieve and ordered an independent review of Tennessee's lethal injection protocol. Although the reprieve has ended, review of the lethal injection protocol continues.

In the instant motion, Mr. Hodges declares he is competent to waive any further appeals, and he submits that the current pause in lethal injection has no impact on his motion to set an execution by his chosen method of electrocution. In light of the series of pro se motions and the instant requests, the Court must now consider, among other things, whether Mr. Hodges' legal representation has ended as he claims; whether Mr. Hodges is competent to waive his right to counsel and any future appeals; and whether Mr. Hodges' execution may be set notwithstanding the ongoing lethal injection inquiry. Accordingly, the State of Tennessee and the Federal Public Defender are hereby ordered to file a response to Mr. Hodges' motion and the considerations set forth herein on or before August 15, 2023.

PER CURIAM

EXHIBIT 5

enRY HodGes 102143
475 Cockrell BenD Blvd
Ashville TN 37219-1048



RECEIVED

AUG 28 2023

RMSI MAILROOM
OUTGOING LEGAL

RECEIVED

SEP 0 7 2023

U.S. District Court
Middle District of TN

The Dept of Corrections/RMSI
has NOT inspected nor
censored and is not
responsible for the contents

CourT Clerk
U.S. DiSTRICT COURT 801 BROADWAY
US CourTHouse
Nashville TN 37203

LEGAL MAIL
8-27-23 6:50pm