## IN THE UNITED STATES MIDDLE DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **HENRY EUGENE HODGES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:23-cv-00952** |
| **v.** | ) | **JURY DEMAND** |
| | ) | |
| | ) | **JUDGE RICHARDSON** |
| **FRANK STRADA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Henry Hodges ("Plaintiff"), an inmate at Riverbend Maximum Security Institution ("RMSI"), filed a complaint pro se,[1] alleging three claims under 42 U.S.C. § 1983—as he words it— "due process violation," "medical malpractice," and "cruel and unusual punishment under the death penalty." The Complaint (Doc. No. 1) is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), under 28 U.S.C. §§ 1915(e)(2) and 1915A.

### INITIAL SCREENING STANDARD

Under the PLRA, the Court must conduct an initial review of any civil complaint filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), or brought by a prisoner-plaintiff against government entities or officials, 28 U.S.C. § 1915A, or challenging the conditions of confinement, 42 U.S.C. § 1997e(c). Upon conducting this review, the Court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42

---

[1] Plaintiff's application to proceed in forma pauperis was granted on December 13, 2023. (Doc. No. 11).

U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court outlines this standard in the following three paragraphs.

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all the factual allegations in a complaint as true. *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and *Twombly*, it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such

allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, i.e., allegations of factual matter—plausibly suggest an entitlement to relief. Id. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). Id. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652–53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791–92 (M.D. Tenn. 2018).

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotation marks and citation omitted). *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *Cf.* Fed. R. Civ. P. 8(e) ("All pleadings shall be so construed as to do substantial justice").

Pro se status, however, does not exempt a plaintiff from compliance with relevant rules of procedural and substantive law. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) ("Neither [the Supreme] Court nor other courts...have been willing to abrogate basic pleading essentials in pro se suits."); *see also Brown v. Matauszak*, 415 F. App'x 608, 612-613 (6th Cir. Jan. 31, 2011) (affirming dismissal of pro se complaint for failure to comply with "unique pleading requirements"

and stating, "a court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (citation and internal quotation marks omitted; alteration in original).

BACKGROUND[2]

Plaintiff is a severely mentally unwell inmate at RMSI, who upon conviction of a heinous murder in 1990 has sat on death row, pending execution, for thirty-three (33) years. His history of and proclivity for violent acts are well-known, as Plaintiff has spent much of his time incarcerated in some form of punitive segregation or solitary confinement due to prior infractions and violence inflicted on prison staff and other inmates. (*Id*. at 25, 66) (stating that Plaintiff has a "very violent history," severely injuring other inmates, has threatened to kill staff, and has a long history of smearing fecal matter in his cell).

On October 5, 2022, upon learning that he was ineligible to receive mail packages for a period of time, Plaintiff started smearing his feces inside his cell. (*Id*. at 29). As a result, TDOC prison staff stopped bringing food to Plaintiff for two consecutive days. (*Id*. at 29, 66). Two days later, to begin cleaning Plaintiff's cell, TDOC prison staff moved Plaintiff from his cell (identified as D-102) to D-101, which Plaintiff describes as a "high max cell" designated for violent inmates. (*Id*. at 29).

The transfer to a "high max call" seemed to be particularly triggering for Plaintiff, who already had spent approximately twelve (12) years in similar punitive confinement, because once placed in D-101, Plaintiff smashed a sprinkler and thereby flooded the cell. (*Id*. at 29, 66). Plaintiff

---

[2] The facts herein are taken from the Complaint, and for purposes of an initial screening, are accepted as true, except to the extent that they are qualified herein (as, for example, by "Plaintiff alleges") to denote that they are not being taken as true but instead are set forth merely to make clear what a party claims to be true. Throughout this opinion, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even though it is aware that any such (alleged) fact ultimately might not prove to be true. The Court emphasizes that whenever it states (alleged) facts without qualifiers, consistent with the above-state protocols, it has not found the alleged facts to be the actual facts.

then found within reach outside the cell a loose metal shard from a drain, which he used to first break a double-paned window—completely shattering the interior pane and cracking the exterior pane—and then cut his own wrists and the head of his penis. (*Id*.). TDOC prison staff, including Defendant Frank Heroux, responded to this incident. Plaintiff, showing the cuts on his wrists, told Defendant Heroux that he wanted to be placed on suicide watch. (*Id*.). Instead, Defendant Heroux took Plaintiff to the infirmary. (*Id*.).

Once at the infirmary, Defendant Heroux instructed Defendant Karen Milliner, who had observed Plaintiff's cell extraction and cracked window, not to place Plaintiff on suicide watch in the infirmary, as Plaintiff was only "trying to manipulate" her.[3] (*Id*. at 29, 63). Plaintiff refused medical treatment, and was later returned to his cell, D-101—the same cell in which Plaintiff had self-harmed and that has a completely shattered interior windowpane—where he was stripped naked without a "suicide smock." (*Id*. at 29-30). Plaintiff also asserts that having searched the cell for razor blades in the past, Defendant Heroux knew there was a possibility that Plaintiff's cell contained razor blades. (*Id*. at 63).

Defendant Heroux informed Plaintiff that he would be on suicide watch while inside his cell. (*Id*. at 29, 63). But despite supposedly being on suicide watch, Plaintiff had enough time to retrieve razor blades, hidden in his cell, and cut off his penis entirely, which he states, "took a little while" and caused profuse blood loss. (*Id*. at 30). Plaintiff was taken to Vanderbilt University Medical Center, where hospital staff attempted to reattach Plaintiff's severed genitalia; however, at some point after reattachment, necrosis set in, and Plaintiff was told he would lose his penis. (*Id*. at 30, 63).

---

[3] Plaintiff in a different portion of his Complaint states that he directly asked Defendant Milliner to place him under suicide watch, but that Defendant Milliner ignored his request, "turn[ing] [his] mental health treatment over to a prison guard ([Defendant] Frank Heroux)." (Doc. No. 1, at 63).

Confined to a wheelchair, Plaintiff was returned to the prison on October 21, 2022,[4] and placed in the "suicide watch wing" of the infirmary. (*Id*. at 30). Per order of Defendant Kent Colburn, a psychologist, who had not observed or spoken to Plaintiff, Plaintiff was moved from his wheelchair to a plastic mattress on top of a "cement slab," with ceiling lights shining directly above him and was placed in "four point restraints," i.e., restraints around his wrists and ankles. (*Id*. at 30, 63). Still in restraints, Plaintiff defecated himself and remained in his own feces for three (3) hours. (*Id*. at 30). Plaintiff also—still under restraint—managed to pull out his catheter, at which point he was placed in a "six point restraint" (i.e., having restraints around wrists, ankles, and biceps) for several days. (*Id*.). When he was finally released from his restraints, Plaintiff had difficulty moving his arms and walking. (*Id*.)

On November 22, 2022, Plaintiff filed a grievance that detailed the above-described cell transfer, self-injury, and post-hospitalization restraint. (*Id*. at 28). TDOC supervisor Ernest Lewis denied this grievance as "inappropriate" because Plaintiff filed it more than seven (7) days after the incident occurred and alleged more than one complaint. (*Id*. at 32). Plaintiff appealed this determination, and his appeal was denied by the presiding assistant commissioner of prisons with TDOC, who concurred with the warden's determination. (*Id*. at 27).

On April 3, 2023, Plaintiff was moved out of D-pod due to a prison lockdown. (*Id*. at 23). Again, Plaintiff took issue with his being transferred to what he perceived to be "High Max Cell," and filed a grievance on April 5, 2023, which described his removal to "High Max Cell" and claimed that it was without any justification. (*Id*. at 24). This grievance was denied by Defendant Dennis Davis, a prison unit manager, who explained in his denial that cell changes are done for

---

[4] Plaintiff provides that he returned on November 21, 2022, but the Court believes this to be a clerical error, as Plaintiff also provides in his Complaint that he was only hospitalized for two (2) weeks. (Doc. No. 1, at 63).

the safety and security of the facility or for population management and that Plaintiff's placement was warranted because Plaintiff had a very violent history, both prior to and during his incarceration (including injuring other inmates and threating prison staff). (*Id*. at 25). This grievance denial was upheld by the warden, Defendant Tony Mays. (*Id*. at 26). Plaintiff appealed the denial of his grievance, but his appeal was denied by the deputy assistant commissioner of prison operations with TDOC, Defendant Kevin Genovese. (*Id*. at 22).

ANALYSIS

Plaintiff brings suit under 42 U.S.C. § 1983, against Defendants[5] to vindicate alleged violations of his federal constitutional rights. Specifically, Plaintiff alleges (1) a "due process violation" in relation to events on April 3, 2023; (2) "medical malpractice" in relation to his self-mutilation and post-hospitalization confinement conditions; and (3) a claim for cruel and unusual punishment, in violation of the Eighth Amendment, based on his not having a scheduled execution date. (Doc. No. 1).

Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones–Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused

---

[5] Plaintiff has made clear that each of the individuals who are Defendants is being sued in his or her individual capacity only. (Doc. No. 1 at 2-3, 6). Plaintiff purports to sue Centurion of Tennessee likewise in its individual capacity, but an entity defendant like Centurion of Tennessee does not have an individual capacity. A claim against Centurion of Tennessee is neither an individual-capacity claim nor an official-capacity claim, but rather a so-called *Monell* claim, *i.e.*, a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In any event, as discussed below, it is clear that Plaintiff has stated no claim against Centurion of Tennessee.

by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

In considering Plaintiff's claims, the Court keeps in mind some basic principles that are applicable here:

> When an individual violates a criminal law and receives a sentence, he usually cannot be heard to complain about the deprivations of liberty that result. Although "prisoners do not shed all constitutional rights at the prison gate, ... lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."

*Ortega v. U.S. Immigr. & Customs Enf't*, 737 F.3d 435, 438–39 (6th Cir. 2013) (quoting *Sandin v. Conner,* 515 U.S. 472, 485. (1995).

At the outset, the Court concludes that even construing his allegations in his favor, Plaintiff has failed to plausibly suggest the liability of Defendant Frank Strada or Centurion of Tennessee of any count. These Defendants appear only in the list of parties to the Complaint (*see* Doc. No. 1, at 14) and are not otherwise referred to in any factual allegations or claims in this action. Such a Complaint, even if given the most liberal construction imaginable, is patently inadequate to state a claim against these Defendants. *See Green v. Correct Care Sols*., No. 3:14-cv-01070, 2014 WL 1806997, at *4 (M.D. Tenn. May 7, 2014) (citing cases) ("It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal as to that defendant, even under the liberal construction afforded to pro se complaints."); *see also Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.") (citing *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991)). So these Defendants will be dismissed from this action from the outset.

### A.  First claim: "Due Process Violation"

Plaintiff's first claim, brought against Defendants Mayes, Genovese, and Dennis, relates to the above-described cell transfer occurring on or around April 3, 2023, where Plaintiff was moved to a "High Max Cell," or punitive segregation. (Doc. No. 1, at 24). Plaintiff alleges that this move violated "due process" because he was "put [ ] in a punitive segregation cell without justification or a disciplinary report or any way to appeal it." (*Id*. at 60). But within his Complaint, Plaintiff included grievance paperwork evidencing that Plaintiff was aware of his right to file a grievance over this cell transfer and that he exercised that right. (*Id*. at 22-25). It also appears Plaintiff's move was not "without justification"—to the extent that "justification" for doing something refers to having express reasons for doing something—as Defendant Dennis, in response to Plaintiff's grievance, recorded several reasons for Plaintiff's placement. (*Id*. at 25).

Moreover, an inmate does not have a right to placement in more desirable or favorable cells within the inmate's prison. *See Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)) ("The Constitution 'does not mandate comfortable prisons[.]'" (internal quotations omitted)). To the extent that Plaintiff complains of being placed in isolation, it is worth noting that "segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *superseded by statute on other grounds*. Plaintiff does not have a constitutional right to avoid segregation. *Sango v. Huss*, No. 1:14-CV-2, 2014 WL 2616592, at *8 (W.D. Mich. June 12, 2014), *aff'd* (Mar. 13, 2015) (citing *Hewitt*, 459 U.S. at 477 n.9). To the extent that Plaintiff complains about the fact that he was moved, or more specifically moved to a cell with fewer privileges, the Court notes that "when prison authorities move an inmate from one cell to another, even to a cell with far fewer privileges,

[an] increased deprivation generally does not implicate a protected liberty interest under the Due Process Clause." *Ortega*, 737 F.3d at 439. "The Constitution does not prevent a prison transfer to a more restrictive setting unless the change would work an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"—in which case the inmate is entitled to some "process," in an amount that "will vary from setting to setting." *Id.*

True, he does have "a *procedural* right to meaningful review of the necessity for such confinement, *if* that confinement imposes an 'an atypical and significant hardship' on him 'in relation to the ordinary incidents of prison life.'" *Sango v. Huss*, 2014 WL 2616592, at *8 (quoting *Sandin*, 515 U.S. at 486–87 (1995)). But even if his confinement did impose such a hardship, Plaintiff's alleged facts (even when construed in his favor as required) do not plausibly suggest a violation of his procedural right to meaningful review. It stands to reason under *Sandin* that the amount of process is adequate if it involves "meaningful review" of the transfer decision. As noted, above, the Complaint itself does not plausibly suggest that Plaintiff was denied meaningful review of the decision to transfer him to a "High Max Cell"; to the contrary, it suggests the opposite.

Finally, to the extent that Plaintiff complains about discomfort, he does not satisfy the requirements for a claim of cruel and unusual punishment. "Temporary inconveniences and discomforts incident thereto cannot be regarded as a basis for judicial relief." *Ford v. Bd. of Managers of New Jersey State Prison*, 407 F.2d 937, 940 (3d Cir. 1969). Plaintiff must allege a substantial risk of serious harm, *Farmer*, 511 U.S. at 837, or must produce evidence of how the unsanitary "condition jeopardized or potentially jeopardized his health or caused it to be unfit for habitation." *Tinsley v. Vaughn*, No. 90–0113, 1991 WL 95323, at *6 (E.D. Pa. May 29, 1991).

True, the Eighth Amendment imposes duties on prison officials to provide humane living conditions within the prison. *Hudson v. Palmer*, 468 U.S. 517, 526–7 (1984). However:

[E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation.

*Hudson v. McMillan*, 503 U.S. 1, 9 (1992).

Thus, as Plaintiff's cell transfer underlying his first claim evidences only Plaintiff's disapproval of the cell chosen—but not of any substantial risk of serious harm or extreme deprivation—and Plaintiff has not alleged any facts suggesting that he was denied "meaningful review" of his transfer, the Court finds that Plaintiff's first claim fails to state a Section 1983 claim upon which relief can be granted. The Defendants named in this claim (Defendants Mayes, Genovese, and Dennis) are not named in any other claim, and so those Defendants are dismissed from this action.

### B. Second claim: "Medical Practice," actually comprising three Eighth Amendment claims

Plaintiff's second claim relates to the above-described gruesome incident that occurred in October 2022, where Plaintiff attempted suicide and fully cut off his genitalia, requiring his hospitalization for several days. After this hospitalization, Plaintiff returned to RMSI under extraordinary, and excessive, measures to keep him restrained. While Plaintiff titles this claim "medical malpractice,"[6] the Court must construe all pleadings in a way to do substantial justice.

---

[6] If Plaintiff truly intended to raise a medical malpractice claim, the Court would note that a medical malpractice allegation is a claim under state law and does not give rise to relief under Section 1983. *See Ross v. Rutherford Cnty. Det. Ctr.*, No. 3:23-CV-00398, 2023 WL 4189655, at *3 (M.D. Tenn. June 26, 2023) (Richardson, J.) (citing *Rankins v. Phillips*, No. 21-2758-SHM-tmp, 2023 WL 2918781, at *2 (W.D. Tenn. Apr. 12, 2023) (citing *Dotson v. Corr. Med. Serv.*, 584 F. Supp. 2d 1063, 1068-69 (W.D. Tenn. 2008))). Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise jurisdiction over supplemental claims arising under state law if the Court has dismissed all the claims over which it has original jurisdiction. *See, e.g., Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (where a federal court dismisses the underlying federal law claims, the court "should not ordinarily reach the plaintiff's state-law claims") (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)); *Brooks v. Rothe*, 577

*See* Fed. R. Civ. P. 8(e). Here, construing the Complaint in Plaintiff's favor, in the Court's view, what Plaintiff really sets forth are three claims under the Eighth Amendment: (1) substantial deprivation of food, (2) deliberate indifference to Plaintiff's serious medical need(s) (against Defendants Heroux, Milliner, and Colburn), and (3) conditions of confinement. The Court will address in turn each of these three claims (which below the Court will call "subclaims").

Plaintiff's first subclaim is that, as a result of smearing his feces in his prison cell, TDOC staff[7] withheld food from Plaintiff for two consecutive days. (Doc. No. 1, at 29, 66). It has been stated that "the Constitution requires[,] that prisoners be fed by their custodians in a manner that comports with [a contemporary standard of decency], and in a manner that is nutritionally sufficient to sustain normal human health." *Caldwell v. George*, No. 1:14-0019, 2015 WL 5838622, at *4 (M.D. Tenn. Oct. 7, 2015), *report and recommendation adopted*, No. 1-14-00019, 2015 WL 6755385 (M.D. Tenn. Nov. 4, 2015) (citing *Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977)) (internal citation omitted). It likewise has been stated that "[d]epriving an inmate of food or serving him contaminated food states a claim for a violation of the Eighth Amendment." *Prince v. Brown*, No. 1:13-0057, 2013 WL 3283479, at *2 (M.D. Tenn. June 27, 2013) (quoting *Thompson v. Mich. Dep't of Corrs*., No. 99–2076, 2000 WL 1597844, at *2 (6th Cir. Oct. 20, 2000).

But these statements are somewhat inexact because they omit any reference to the fact that such a claim requires not only a substantial deprivation of food for the plaintiff, but also a sufficiently culpable mental state on the part of the defendant. True, "[a] substantial deprivation of

---

F.3d 701, 709 (6th Cir. 2009) (" 'If federal claims are dismissed before trial, the state claims generally should be dismissed as well.' ") (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384-85 (6th Cir. 2003)). To the extent the Complaint can be construed to allege independent state law claims for medical malpractice, the Court declines to exercise supplemental jurisdiction over those claims because Plaintiffs other two claims must be dismissed, as discussed in this order. *See* 28 U.S.C. § 1367(c)(3).

[7] Plaintiff did not identify any TDOC staff member allegedly involved in this incident, let alone name any such person as a defendant as to this subclaim.

food may be sufficiently serious to state a conditions-of-confinement claim under the Eighth Amendment." *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002). But the key word here is "may'"; what it suggests (correctly) is an alleged substantial deprivation of food does not always suffice to state a conditions-of-confinement claim. A conditions-of-confinement claim must satisfy *both* an objective prong *and* a subjective prong. *Hasenmeier-McCarthy v. Rose*, 986 F. Supp. 464, 469 (S.D. Ohio 1998). The objective element requires that the alleged deprivation be "sufficiently serious," and the subjective element is that the prison official had a sufficiently culpable state of mind, i.e. one of "deliberate indifference" to inmate health or safety. *Farmer*, 511 U.S. at 834 (quoting *Wilson,* 501 U.S., at 302–303; *see also Helling v. McKinney,* 509 U.S. 25, 34–35 (1993).

Here, Plaintiff was deprived of food for two consecutive days. Deprivation of food over multiple days—which is more concerning, than the typical prisoner complaint of prison staff serving cold or nutritionally inadequate meals—supports a substantial deprivation of food, and the Court finds the objective component is met here.[8]

But the problem is with the subjective component. The alleged facts do not plausibly suggest deliberate indifference by employees or officials at the prison.[9] In fact, they do not plausibly suggest any deliberate indifference by anyone in particular. Relatedly, Plaintiff does not make all clear who it is that is allegedly liable on this subclaim. As such, Plaintiff's first subclaim must fail, both because Plaintiff has not alleged facts that plausibly suggest the subjective component of this subclaim as required, and alternatively (and even more fundamentally) the claim

---

[8] The Court finds it persuasive that in one case, the Tenth Circuit found it improper to dismiss a claim from a prisoner complaining of deprivation of food for a similar period without further factual development. *Dearman v. Woodson*, 429 F.2d 1288, 1290 (10th Cir. 1970).

[9] Rather, the facts actually support the existence of a penological purpose in withholding Plaintiff's food (i.e., to prevent Plaintiff from vandalizing the prison Per Plaintiff, "I had been smearing feces on the walls and the [TDOC] staff thought if I didn't eat I couldn't deficate [sic]." (Doc. No. 1 at 51, ¶ 10).

cannot reasonably be construed as being brought against (and providing fair notice of alleged liability to) any Defendant.

In his second subclaim, Plaintiff asserts a claim, brought against Defendants Heroux and Milliner, for deliberate indifference to a serious medical need,[10] being Plaintiff's imminent risk of suicide. (Doc. No. 1, at 29-30). A Section 1983 claim premised upon allegations of deliberate indifference to a convicted prisoner's serious medical need "constitutes the unnecessary and wanton infliction of pain" and violates the Eighth Amendment. *Ruiz v. Martin*, 72 F. App'x 271, 275 (6th Cir. 2003) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 570 (6th Cir. 2013). Protection from a known risk of suicide is a serious medical need. *See Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (holding that a prisoner "had a clearly established constitutional right to be protected from the known risks of suicide and to have his serious medical needs attended to") (quoting *Yellow Horse v. Pennington Cnty.*, 225 F.3d 923, 927 (8th Cir. 2000))).

Like a conditions-of-confinement claim, a deliberate-indifference claim against a prison official has both an objective component and a subjective component. *Farmer*, 511 U.S. at 834. The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). In the context of risk of suicide, an inmate-plaintiff meets the objective prong of the Eighth Amendment analysis by showing that the he or she showed suicidal tendencies during the period of detention or that he or

---

[10] As courts sometimes do, the Court herein at times refers to this claim for short as a claim of "deliberate indifference." But it is important to keep in mind that this shorthand terminology actually refers only to the *subjective* component of a claim of deliberate indifference to a serious medical need, while omitting any reference to the objective component of such a claim (i.e., a serious medical need).

she "posed a strong likelihood of another suicide attempt." *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482–83 (6th Cir. 2020) (quoting *Perez v. Oakland Cnty.*, 466 F.3d 416, 424; (6th Cir. 2006). Plaintiff showed suicidal tendencies in his first suicide attempt, cutting his wrists and the head of his genitalia, and that he posed likelihood of another suicide attempt, when he, in no unmistakable terms, requested to be placed on suicide watch. (Doc. No. 1, at 29-30). The objective component is met.

The subjective component is satisfied by a showing of deliberate indifference. *See Estelle*, 429 U.S. at 104, and *Darrah v. Krisher*, 865 F.3d 361, 367 (6th Cir. 2017). Plaintiff is required to show that "'the official knew of and disregarded an excessive risk to inmate health or safety.'" *Murray v. Dep't of Corr.*, 29 F.4th 779, 786–87 (6th Cir. 2022) (quoting *Farmer*, 511 U.S. at 837, (alterations omitted)). For a particular defendant to be held liable on such a claim, "the plaintiff must show that [the] defendant acted with a mental state 'equivalent to criminal recklessness.'" *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). Such a "showing requires proof that [the] defendant subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it." *Id*. (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (internal quotation marks omitted)).

Here, Plaintiff pled facts showing that Defendant Heroux acted with *reckless disregard* of a substantial risk of serious harm in denying Plaintiff's request to be placed on suicide watch after his  obvious attempted suicide. But it did not end there. Defendant Heroux acted with reckless disregard by returning Plaintiff to the same cell in which he self-harmed with a metal shard, and now possibly had access to new means leading to serious injury via broken glass from a cracked window. (*Id*. at 29, 63). And construed in a light most favorable to Plaintiff, the facts plausibly

suggest that Defendant Heroux, having searched the cell for razor blades in the past, (*id*. at 63), had knowledge that this cell possibly contained hidden razor blades, presenting yet another risk of serious injury. Such placement of a prisoner who is known to be and is manifestly mentally unwell, who just attempted suicide, plausibly suggests reckless indifference to a Plaintiff's serious medical need. Moreover, Plaintiff had enough time to retrieve razor blades hidden in his cell and cut off his penis entirely, which (the Court must accepts as true at this juncture) "took a little while," despite supposedly being on suicide watch (i.e., constant supervision).[11] (*Id*. at 30).

As for Defendant Milliner, Plaintiff pled facts to show Defendant Milliner acted with reckless disregard in observing Plaintiff's cell extraction and cracked window in his cell, and— whether following Defendant Heroux's instruction or Plaintiff's direct request to her—did not place Plaintiff on suicide watch in the infirmary, despite Plaintiff's clear requests. (*Id*. at 29, 63).

Thus, the Court finds that Plaintiff has alleged factual matter to permit, for the time being, a claim for deliberate indifference of a serious medical need in violation of the Eighth Amendment against Defendant Heroux and Milliner.

Finally, and in connection with the self-injury incident above, Plaintiff's third subclaim, brought against Defendant Colburn, is that his post-hospitalization conditions of confinement constituted cruel and unusual punishment in violation of the Eighth Amendment. As previously stated, a conditions-of-confinement claim must satisfy the objective and subjective comments of the Eighth Amendment. The objective component is contextual and responsive to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Extreme deprivations" are required to make out a conditions-of-confinement claim. *Id.* Conditions-of-confinement claims "are highly fact-specific, but one guiding principle is that the length of exposure to the conditions

---

[11] Plaintiff was placed on a cement slab post-surgery, which involved having his genitalia reattached and later surgically removed once necrosis set in.

is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017). One aspect of the conditions of which Plaintiff complains is that it amounted to solitary confinement. As noted above, confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt*, 459 U.S. at 467-73, (1983). The mere fact of segregation alone, therefore, does not support an Eighth Amendment claim.[12]

But there was more to Plaintiff's incident of solitary confinement than just segregation. It involves him being physically strapped to a cement slab in a room alone for several days staring directly into overhead lighting, not long after severe blood loss and undergoing a major surgery to reaffix (and later surgically remove) his severed genitalia. (Doc. No. 1, at 28-30). Not only was Plaintiff left physically restrained and immobile for long stretches of time, Plaintiff laid in his own excrement for approximately three hours, (*Id.* at 30), which not only heightens risk for infection post-surgery but plausibly perceived as contrary to contemporary standards of human decency. Accepting all factual allegations as plead as true, the Court finds for the time being that Plaintiff's restraint constitutes an "extreme deprivation," and so the objective component is met.

Where this subclaim fails is in the subjective component. Per the Complaint, Plaintiff's restraint was ordered by Defendant Kent Colburn, despite his not having observed or spoken to Plaintiff, who was at the time of such order was immobilized and confined to a wheelchair. (Doc. No. 1, at 63). As with Defendants Heroux and Milliner, Plaintiff must show that Defendant Colburn "subjectively perceived facts from which to infer substantial risk to [Plaintiff], that [Defendant Colburn] did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it." *Comstock*, 273 F.3d at 703, (internal quotation marks omitted).

---

[12] The Court has discussed above the circumstances under which segregation (or, to be more precise, the circumstances under which it is imposed) can support a procedural due process claim, but here the Court of course is discussing an Eighth Amendment claim.

Although Defendant Colburn *could have* drawn an inference that placing Plaintiff in restraints could lead to harm, even without having observed Plaintiff prior to ordering the restraints, Plaintiff does not plead any facts plausibly suggesting that Defendant Colburn *did in fact draw the inference* and then disregarded that risk by failing to take reasonable measures to abate it. The alleged facts at most make this inference *possible*, rather than *plausible* as required. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) ("[T]the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

And to be clear, Plaintiff's complaint is not to *having being restrained* but rather to the conditions he endured *while restrained*, i.e., being alone for several days, staring directly into overhead lighting, and laying in his own excrement for approximately three hours. (Doc. No. 1 at 28-30). There are no facts in the Complaint plausibly suggesting that Defendant Colburn had any knowledge of or control over the conditions Plaintiff endured while restrained, and no facts have been pled to suggest that Defendant Colburn was aware of the conditions Plaintiff endured received while restrained. This is because, among other things, awareness of such conditions cannot plausibly be inferred from the mere fact that Defendant Colburn was aware on the front end that Plaintiff was being restrained.

So as to the third subclaim, Plaintiff has set forth facts that satisfy only the objective component, and not the subjective component. Therefore, the Court finds that Plaintiff's third subclaim fails, and thus Defendant Colburn, the only Defendant implicated by this subclaim, is dismissed from this action.

In sum, the Court finds at this stage that Plaintiff has pled one colorable claim under the Eighth Amendment, deliberate indifference to Plaintiff's serious medical need, against Defendants Heroux and Milliner.

## C. Third Claim: Awaiting Execution is Cruel and Unusual Punishment

Plaintiff's last claim is that waiting for an execution date to be scheduled is cruel and unusual punishment. The Court certainly can understand how a looming, indeterminate execution date could cause dread or frustration, as "[o]ver a century ago, [the Supreme Court] recognized that 'when a prisoner sentenced by a court to death is confined in the penitentiary awaiting the execution of the sentence, one of the most horrible feelings to which he can be subjected during that time is the uncertainty during the whole of it.'" *Lackey v. Texas*, 514 U.S. 1045 (1995) (quoting *In re Medley,* 134 U.S. 160, 172 (1890) (internal citations omitted)).[13] However, delays in carrying out a death penalty often relate to the prolonged nature of death-penalty appeals and habeas corpus proceedings, which reflects commitment to ensuring that the inmate has receive a rightful sentence and that capital cases received the highest level of scrutiny.

Here, thirty-three (33) years has passed since Plaintiff was first sentenced to death. (Doc. No. 1, at 66). In that time, Plaintiff has pursued multiple avenues for challenging his death

---

[13] The Supreme Court in *Lackey* also noted that:

> when the death penalty "ceases realistically to further these purposes [i.e., retribution and deterrence], ... its imposition would then be the pointless and needless extinction of life with only marginal contributions to any discernible social or public purposes. A penalty with such negligible returns to the State would be patently excessive and cruel and unusual punishment violative of the Eighth Amendment." *Furman v. Georgia,* 408 U.S. 238, 312, 92 S. Ct. 2726, 2764, 33 L.Ed.2d 346 (1972) (opinion concurring in judgment); *see also Gregg v. Georgia,* 428 U.S., at 183, 96 S. Ct., 2929 ("[T]he sanction imposed cannot be so totally without penological justification that it results in the gratuitous infliction of suffering").

*Lackey*, 514 U.S. 1045.

sentence, via appeal and various forms of collateral attack. *See State v. Hodges*, No. 01-C-01-9212-CR00382, 1995 WL 301443, at *1 (Tenn. Crim. App. May 18, 1995), *aff'd*, 944 S.W.2d 346 (Tenn. 1997); *Hodges v. State*, No. M1999-00516-CCA-R3PD, 2000 WL 1562865, at *1 (Tenn. Crim. App. Oct. 20, 2000) (affirming Davidson County Criminal Court's denial of Plaintiff's post-conviction relief); *Hodges v. Bell*, 548 F. Supp. 2d 485, 490 (M.D. Tenn. 2008) (denying petition for habeas corpus relief), *aff'd sub nom. Hodges v. Colson*, 711 F.3d 589 (6th Cir. 2013), opinion amended and superseded, 727 F.3d 517 (6th Cir. 2013), *and aff'd sub nom. Hodges v. Colson*, 727 F.3d 517 (6th Cir. 2013); *Hodges v. Carpenter*, 575 U.S. 915 (2015) (denying writ of certiorari). In this way, Plaintiff was not only afforded the right to appeal his sentence, but he clearly fully manifested the vetting of those rights.

Although the Supreme Court has repeatedly grappled with the effects of a pending (but sometimes temporally indefinite) execution during the inevitable long wait between the imposition of sentence and the actual infliction of death, what remains clear is that there is no recognized constitutional right to having an execution date scheduled or set. The Supreme Court repeatedly has denied writ of certiorari of claims that sitting on death row, awaiting an execution, is cruel and unusual. *See e.g., Jordan v. Mississippi*, 585 U.S. 1039 (2018); *Sireci v. Florida*, 580 U.S. 1036 (2016); *Conner v. Sellers*, 579 U.S. 957 (2016); *Boyer v. Davis*, 578 U.S. 965 (2016); *Lackey*, 514 U.S. 1045. Those denials do not constitute substantive, merits-based determinations regarding whether such a right exist, but they do highlight that the Supreme Court has never taken the opportunity to announce such a right. Still less has it announced a test for when that right is violated, *i.e.,* a manner of determined when (or by when) an execution date must be set lest the condemned inmate's Eight Amendment rights be violated.

Finally, even if Plaintiff had plausibly suggested a right to have an execution date set (under particular circumstances) and a violation of that right (given his particular circumstances), the Court is unaware of any authority it has to grant the particular relief sought from this Court (i.e., scheduling an execution date). Plaintiff's execution, being sentenced under state law, falls under the mandate of the Tennessee Supreme Court, which leaves in question the limits of this Court's remedial powers.

Finally, the Court notes that it seriously questions whether this form of relief is appropriately sought via Section 1983, rather than via habeas corpus. The Court suspects the latter, but it need not decide that here.

Thus, the Court finds for purposes of initial review that Plaintiff's third claim fails to state a federal claim upon which relief can be granted.

<u>CONCLUSION</u>

For the reasons stated herein, the Court finds that Plaintiff's first claim ("due process violation") and third claim (cruel and unusual punishment due to not having a scheduled execution date) fail to state a claim upon which relief can be granted. Accordingly, these claims do not survive screening under Section 1915(e)(2) and therefore are dismissed. But the Court does find, for purposes of initial screening, that Plaintiff has pled one colorable claim under the Eighth Amendment, namely a claim of deliberate indifference to Plaintiff's serious medical need. Being the defendants named in this claim, Defendants Frank Heroux and Karen Milliner shall remain parties to this matter; all other named defendants are **DISMISSED** from this action.

The Court's determination that the Complaint states a colorable claim for purposes of this initial screening does not preclude the Court from neither dismissing any claim at any time for the

reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

Moreover, presently pending before the Court are two motions requesting a screening order under the PLRA, pursuant to 28 U.S.C. § 1915(e)(2), filed by Defendants Dennis Davis, Kevin Genovese, Frank Heroux, Tony Mayes, Frank Strada (Doc. No. 29, "TDOC Motion") and Defendants Centurion of Tennessee, Kent Colburn, Karen Milliner (Doc. No. 32, "Centurion Motion"). With the entry of this Order, these Motions are now moot. Thus, the TDOC Motion (Doc. No. 29) and the Centurion Motion (Doc. No. 32) are hereby **DENIED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATE DISTRICT JUDGE